## AMERICAN CASUALTY & LIFE CO. v. McCUISTION.

No. 14841.

Court of Civil Appeals of Texas. Fort Worth.

May 2, 1947.

Rehearing Denied May 30, 1947.

Martin, Moore & Brewster, of Fort Worth, and Chaney & Davenport, of Dallas, for appellant.

Rawlings, Sayers & Scurlock, of Fort Worth, for appellee.

McDONALD, Chief Justice.

Appellee carried a policy of accident insurance, issued by appellant, providing for payment of benefits at the rate of $100 per month for a period not exceeding thirty months for loss of time resulting directly and independently of all other causes from bodily injuries sustained solely through accidental means. Among the qualifying clauses of the policy was one reading in part as follows: "The indemnity payable hereunder for any disability fatal or otherwise resulting directly or indirectly from * * * strains, sprains, * * * shall be limited to One-Fourth the amount specified herein for Partial Accident Disability, not to exceed there consecutive months."

On May 14, 1945, appellee fell, receiving a blow on his right leg. Thereafter he delivered to appellant a statement in the nature of a proof of loss, in which it was recited that the disability claimed by him was due to a sprain. On February 12, 1946, appellant wrote appellee a letter containing the following language:

"We are in receipt of completed proofs in your recent claim for benefits under Policy No. 10,455 A5-100B6B.

"The proofs show your disability resulted from a sprain. The policy provides under additional provisions, page three, paragraph three, the indemnity payable hereunder for any disability resulting directly or indirectly, from strains or sprains shall be limited to one-fourth the amount specified herein for partial sickness disability not to exceed three consecutive months.

"Your claim is being allowed for a period of three months in the amount of $37.50, which is in accordance with the terms and provisions of the policy. We hand you herewith our draft to cover."

Enclosed in the letter was a draft payable to appellee in the sum of $37.50, on the back of which was a release reading as follows:

"Received from the
American Casualty and Life Company
"Dallas, Texas

"The sum of $37.50 in full payment, compromise, satisfactory release and discharge of any and all liability, I or we, myself or ourselves, me or my beneficiaries, heirs, executors, administrators, or their executors may have against said Company under its Policy No. 10455 A5-100B6B on account of the loss sustained by reason of any injuries or illness occurring prior to 12th day of February, 1946, and in full settlement of all other claims and demands, originating prior to the date of this draft. And in consideration of the sum aforesaid, I, for myself, my heirs, representatives, and assigns, do hereby agree and covenant to hold and

save said Company, or its assigns, free and clear from any and all liability of whatsoever nature which now exists, or which may hereafter accrue, by reason of, or arising out of or contributed to by any personal injury or sickness which I have received or contracted prior to the date hereof.

"Sign here.   / s /   T. M. McCuistion
"Claimant".

Appellee signed the release and cashed the draft.

Shortly after he received and cashed said draft, appellee was examined by another physician. This physician found a cancerous tumor on appellee's right knee, and recommended that appellee's leg be amputated before the cancerous condition should spread to other parts of his body. The leg was amputated above the knee. Appellee then filed another claim with appellant, seeking payment for total disability from the date of the accident. Appellant wrote appellee a letter reading in part as follows:

"We are in receipt of completed proofs in your recent claim for benefits under Policy No. 10,455 A5–100B6B.

"The proofs show your present disability resulted from an injury received on or about May 14th, 1945. Our records show that under the date of February 12th, 1946, we paid to you the sum of $37.50 and secured a release for any injuries or illness originating prior to the date of February 12th, 1946, therefore, this claim is not covered and cannot be allowed."

Appellee brought the present suit, charging an anticipatory breach of the contract of insurance, and seeking recovery for the matured monthly benefits, the present value of the unmatured benefits, and interest, penalty and attorney's fee. In aid of his suit, he sought to set aside the release given when he received the $37.50, on the ground of mutual mistake.

The case was submitted to the jury on special issues, as more specifically shown later in this opinion. The court rendered judgment on the verdict in favor of appellee for the sum of $2,893.30, being the total of the matured monthly benefits plus the calculated value of the unmatured installments. Appellant's brief presents fifteen points of error.

Appellant moved to dismiss the case, and later moved for an instructed verdict, on the theory that the release given upon receipt of the $37.50 was a compromise settlement of a claim for personal injuries, and could not be set aside on the ground of mutual mistake. As shown above, the policy provided that liability for disability resulting from strain or sprain should be limited to one-fourth the amount specified for partial accident disability, but not to exceed three months. The effect of such provision was to limit liability to the sum of $37.50 if the disability resulted from strain or sprain. The basis of appellee's suit is that he and appellant were mutually mistaken, at the time the $37.50 was paid, in thinking that appellee's disability resulted from a sprain, when as a matter of fact his disability resulted from a bruise. Appellant's contention is that the $37.50 was paid in compromise of appellee's claim under the policy, and that the release executed pursuant thereto cannot be set aside because of a mutual mistake as to the nature or extent of the injury suffered by appellee.

In 45 Am.Jur., p. 685, it is said: "A general release of a claim for personal injuries may, under proper circumstances, be avoided on the ground of mutual mistake as to the nature or seriousness of the injury, although, in a few cases, courts seem to have taken the view that avoidance of the release can be based only on the ground of fraud or false representations. * * * While a mistake as to the extent of the injury, due to unknown conditions, is material, it would seem that unknown and unexpected consequences of a known injury will not bring a case within the rule permitting avoidance of a release on the ground of mutual mistake. * * * Where the release is given with reference only to known injuries, and it subsequently develops that a substantial injury then existed which was unknown to the parties and not taken into consideration, the release may be avoided on the ground of mutual mistake. Where, however, the release expressly so provides, subsequenly discovered unknown injuries will not sup-

port an action for its avoidance. The time when the release was executed and the amount of the consideration may, in connection with other circumstances, have an important bearing upon the question whether the release can be avoided as tending to show fraud or mutual mistake, or the absence thereof."

▇ Somewhat the same language is found in 53 C.J., pp. 1211–1213, and in Williston on Contracts, Sec. 1551, Vol. 5, pages 4347–4349. Many cases in point are cited in the texts just referred to, and still others are cited in annotations in 48 A.L.R. 1472 and in 117 A.L.R. 1024. A release being a contract, the search is in part for the intention of the parties. The question may be whether it was intended only to release known injuries, or to release all injuries, known or unknown. In the case before us, however, it is not the extent of the injury that is involved, but the cause of it. We may inquire whether the parties intended to settle and release a claim for injury to the leg, whatever may have been the cause of the injury, or whether they intended to settle only an injury caused by a sprain. The importance of the cause of the injury, of course, lies in the fact that a potential liability for benefits of $100 per month for thirty months could result from an injury caused by one thing, and a limited liability of only $37.50 could result from an injury caused by any of the things set out in the paragraph from which we have quoted in part. The specific language in the letter transmitting the draft to appellee is more limited than the general language found in the release on the back of the draft. In the letter it is stated that the proof submitted shows injury resulting from strain, and that there is therefore owing under the policy only the sum of $37.50. All of the usual elements of compromise are lacking in the case. There was no denial by appellant of all liability under the policy, and there was no claim by appellee of anything more than an injury caused by a sprain. There was not a payment of more than the amount admitted by appellant to be owing, nor was there an acceptance by appellee of less than the amount claimed in the proof of loss submitted by him. The re-

lease on the back of the draft contained words of general meaning, but the language of the letter transmitting the draft clearly set out appellant's understanding of the matter, that is to say, that the claim fell under and was governed by the policy provision limiting liability to the sum of $37.50. There was no dispute between the parties as to the cause of the injury. Both acted on the premise that it was caused by a sprain. There is nothing in the record to show that there was any difference of opinion as to which provision of the policy governed the amount payable. The settlement did not involve speculation as to the extent of the injury, or the cause of it, or the probabilities or possibilities of future development of the injury. No other conclusion can reasonably be drawn from the evidence shown in the record than that both appellant and appellee believed that the injury was caused by a sprain, and that the claim therefore was limited by the policy provision in question. The payment of the $37.50 by appellant, the acceptance of such amount by appellee, and the execution of the release, obviously were the result of this mutual mistake of the parties. Appellant especially relies on the holding in Houston & T. C. R. Co. v. McCarty, 94 Tex. 298, 60 S.W. 429, 52 L.R.A. 293, 86 Am.St.Rep. 835, but the facts of that case distinguish it from the case now before us.

▇ Appellant also contends that the payment of the $37.50 constituted an accord and satisfaction. We overrule the contention. What is said above is largely applicable to the question of accord and satisfaction.

Appellant says that a mistake of fact to set aside a compromise settlement or accord and satisfaction must be a mutual mistake of a matter not disputed at the time of settlement, and not one where there was such a dispute in the evidence as required a finding by the jury on conflicting evidence. We do not entirely agree either with the proposition of law suggested, or with the intepretation of the evidence. We can see no reason why the defense of mutual mistake could not be asserted even though, at the time of trial, there might be a conflict of testimony as to what were the

facts existing at the time of settlement. Also, we find no substantial dispute about what happened at the time of settlement. The documentary proof establishes without dispute, it seems to us, that both parties made the settlement of $37.50 on the basis that the injury was caused by a sprain and that the applicable policy provision was the one which limited liability where the injury was so caused.

■ The question of mutual mistake was submitted to the jury in the following manner. Special Issue No. 7 inquired if the payment of the $37.50 was made by appellant with the belief that appellee's disability, if any, was caused by a sprain, and Issue No. 8 inquired if the $37.50 was accepted by appellee with such belief. Appellant asserts that the manner of submission was erroneous in that there was omitted therefrom the question whether the mistaken belief was material, the question whether the mistaken belief induced the parties to make the settlement, and the question whether the parties would have made the settlement but for the mistaken belief. In the first place, we think that the evidence is undisputed as to the so-called omitted questions. It is apparent that a mistake which would reduce liability under the policy from $3,000 to $37.50 would be material, and it is equally apparent that the mistake must have been the inducing cause of a settlement for such an insignificant sum. The materiality of the mistake is so clearly established by the evidence that reasonable minds could not differ about it.

As has been stated, appellee consulted another physician after receiving the $37.50, and was advised that his leg ought to be amputated. After it was amputated, appellee filed another claim for benefits due under the policy. Appellant wrote appellee a letter, mentioned earlier in this opinion, acknowledging receipt of the claim, or proof of loss. The letter reads in part as follows: "Our records show that under date of February 12th, 1946, we paid you the sum of $37.50 and secured a release for any injuries or illness originating prior to the date of February 12th, 1946, therefore, this claim is not covered and cannot be allowed."

■ Several questions are raised by appellant concerning the failure of appellee to furnish proof of loss as required by the policy, and concerning the submission of an issue to the jury relating to the matter. It is clear to us that the evidence shows as a matter of law that appellant waived any proof of loss other than that which was given, by the denial of liability made in the letter just mentioned. "The rule is unquestioned in this state that where the insurance company denies liability under the terms of the policy, that a compliance with the policy to furnish proofs of loss is waived and a recovery may be had thereon without furnishing such proofs." Federal Surety Co. v. Smith, Tex.Com.App., 41 S. W.2d 210, 213.

■■ It was appellee's contention that the injury to his leg was caused by a bruise, rather than a sprain. Appellant contends that the evidence is not sufficient to support the jury finding that the injury was caused by a bruise. We overrule the contention. The evidence was sufficient to support the verdict in this respect, when we test it in the light most favorable to appellee, as the law requires us to do.

■ Appellant also contends that the court erred in rendering judgment for the present value of the unmatured monthly payments, saying that the evidence was undisputed that there was no repudiation of the contract by appellant, but only a disagreement about the effect of a compromise settlement. We disagree with this interpretation of the evidence. Appellant's letter to appellee, from which we have quoted above, amounted to an unqualified denial of any further liability under the policy, either as to matured payments or as to unmatured payments. There was an entire repudiation of liability, as distinguished from a mere failure or refusal to pay the matured installments. Pollack v. Pollack, Tex.Com.App., 39 S.W.2d 853; Id., Tex. Com.App., 46 S.W.2d 292; Universal Life & Accident Ins. Co. v. Sanders, 129 Tex. 344, 102 S.W.2d 405; Southland Life Ins. Co. v. Gatewood, Tex.Civ.App., 115 S.W. 2d 723, affirmed by the Supreme Court in case under same style, reported in 135 Tex. 177, 141 S.W.2d 588; American Nat. Ins.

Co. v. Fox, Tex. Civ.App., 184 S.W.2d 937, writ refused for want of merit.

The first special issue inquired if appellee sustained an injury on or about May 14, 1945. The second issue, submitted conditionally upon an affirmative answer to the first issue, inquired if the injury was sustained solely through accidental means. The third issue, submitted conditionally upon an affirmative answer to the second issue, was as follows: "Do you find from a preponderance of the evidence that such injury, if any, resulted directly and independently of all other causes in total disability and loss of time on the part of the plaintiff, T. M. McCuistion?"

The charge contained a definition of total disability reading as follows: "The term 'total disability and loss of time' as used in this charge does not mean an absolute physical disability of the plaintiff to transact any kind of business pertaining to his occupation, but total disability exists if he is unable to do any substantial portion of the work connected therewith."

■ The submission of the question of total disability is attacked in four points of error. It is asserted that the court erred in defining total disability and loss of time as it did, instead of using the language of the policy, to-wit, "If such injury shall from the date of the accident wholly and continuously disable the insured from performing each and every duty pertaining to his business or occupation and results in loss of time. * * *" Under the holdings in the following cases, we find no reversible error in the definition used in the charge. Commonwealth Bonding & Casualty Co. v. Bryant, 113 Tex. 21, 240 S.W. 893; Hefner v. Fidelity & Casualty Co., Tex.Civ.App., 160 S.W. 330, affirmed by Supreme Court, Id., 110 Tex. 596, 222 S.W. 966; Great Southern Life Ins. Co. v. Johnson, Tex.Com.App., 25 S.W.2d 1093; Winters Mut. Aid Ass'n, Circle No. 2 v. Reddin, Tex.Com.App., 49 S.W.2d 1095.

■ It is next claimed that the finding of the jury, in view of the definition of total disability and loss of time contained in the charge, was not a finding of total disability as defined in the policy. We overrule this contention under authority of the cases just cited, and also Kemper v. Police & Firemen's Ins. Ass'n, Tex.Com.App., 44 S.W.2d 978.

■ It is next claimed that the uncontradicted evidence showed that plaintiff was not unable to perform one or more of the duties of his employment. Without setting out the evidence in detail, we hold that it was sufficient to support the verdict when viewed in the light most favorable to appellee.

■ Appellant says that the third issue is multifarious, in that it contains four separate inquiries, (1) did the injury directly cause the disability, (2) did the injury independently of all other causes result in disability, (3) did it result in total disability, and (4) did it result in total loss of time. We do not agree with this contention. A somewhat similar objection was made to an issue in Federal Surety Co. v. Smith, Tex.Com.App., 41 S.W.2d 210, and was overruled. Substantially there is but a single inquiry, to-wit, whether or not the injury caused the disability.

■ Appellant's fourteenth point of error reads as follows: "By express terms of the policy defendant is not liable for the loss of feet unless the same occurs within 91 days after the injury causing it, and the court erred in rendering judgment for incapacity resulting from a loss of foot in this case, after the amputation had healed and physician had been discharged."

The point of error is somewhat confusing, and the argument made under it appears not to be altogether relevant to the point of error. According to the brief, the point is germane to the fifth and forty-eighth assignments of error, which we take it are the fifth and forty-eighth numbered paragraphs in appellant's motion for new trial. The fifth assignment relates to the definition of total disability and loss of time found in the court's charge. This matter has already been discussed. The forty-eighth assignment charges error in entering judgment on the verdict of the jury for the reason, to quote from the assignment, "that the undisputed evidence shows that the plaintiff's loss of time is now due to a loss of leg, which said loss of leg did not occur within ninety days after the injury."

480

A provision of the policy designated as Part Two provides for payment of specific benefits, including the loss of a foot, if the loss results within ninety days from the date of the accident. Part Two simply is not applicable to the facts of this case, either as a ground of recovery or as a ground of defense, because the loss of the foot did not occur within ninety days from the date of the accident. A recovery here is to be allowed, if at all, under the general disability provisions of the policy.

The judgment of the trial court is affirmed.