KING v. METROPOLITAN LIFE INS. CO., INC.—97 S. W. (2d), 651.

Eastern Section. August 1, 1936.

Petition for Certiorari denied by Supreme Court, October 10, 1936.

Kilgo & Armstrong, of Greeneville, for plaintiff in error.
Milligan & Haynes, of Greeneville, for defendant in error.

PORTRUM, J. On November 5, 1935, plaintiff sued the defendant for $2,500 and interest, including the statutory penalty of 25 per cent., for the alleged breach of contract of a certain accident policy issued by the defendant to the plaintiff, dated April 24, 1935. And it is alleged that said policy provided for indemnity "for loss of one hand by severance at or above the wrist joint . . . one-half of the said principal sum," or the sum of $2,500, the amount

sued for, and the policy containing the provision is made an exhibit to the declaration.

It is further averred that in August, 1935, the plaintiff sustained the loss of his left hand by a severance at or above the wrist joint, which injury was caused directly, and independently of all other causes, by violence and accidentally, while the plaintiff was overseeing or superintending the installation of a certain machine in his line of work when his hand came in contact with a saw, causing the injury.

The plea to the declaration was: (1) That the defendant was not indebted to the plaintiff in the amount sued for or any amount; (2) that it did not breach its contract in any respect; (3) that no demand was made by the plaintiff upon the defendant maturing the statutory penalty; (4) that, if plaintiff is entitled to recover any amount by reason of his change in occupation the insurer would be entitled to reduce the indemnity as provided in the policy.

At the conclusion of the introduction of the plaintiff's testimony a motion was made by the defendant for a directed verdict which was sustained by the court and the suit dismissed. From the order overruling the motion for a new trial an appeal in error was prayed and perfected to this court.

The sole assignment of error is that the court erred in directing a verdict in favor of the defendant at the conclusion of the testimony of the plaintiff. The terminative question is: Did the plaintiff under the terms of the policy sustain the loss of one hand, by severance, at or above the wrist joint? The plaintiff King testified as follows:

"Q. What did the saw do to your hand?

"A. It cut it completely off except the skin on the under side.

"Q. How did it cut through your hand?

"A. Completely through except the skin underneath it.

"Q. Mr. King, this was an accident down there?

"A. Purely an accident.

"Q. Did that cut completely sever every bone and ligament of your wrist?

"A. Yes sir.

"Q. What did you do when your hand was severed above the wrist joint?

"A. It fell down and I grabbed it and pulled it back up and Mr. Mallery bound my arm to keep me from bleeding to death. I bled two and one-half quarts of blood.

"Q. Mr. King, you say you completely lost your hand by severance at or above the wrist joint?

"A. Yes sir.

"Q. Mr. King, what use is that hand to you?

"A. Well, I haven't found so far it is useful for anything.

"Q. Can you move any of your fingers?

"A. No sir.

"Q. Do you have any use whatever of this hand?

"A. No sir.

"Q. Is the hand now smaller than it was?

"A. Yes sir, you see this arm here is about as small again as it was when it was cut."

Mr. Mallery gives a verbal description of the wound:

"When he (King) reached under same (table) his left hand came in contact with the rip-saw and was almost cut off near the wrist. The saw first struck his left thumb about the middle, cut up the thumb towards the wrist, and then across the wrist cutting both bones in two."

This witness was asked to designate upon some photographs the course of the wound upon the hand, and these pictures were referred to as Exhibit A to his testimony, but the photographs in the record are all numbered exhibits to the testimony of the plaintiff; we assume they are the same pictures, but they are not very illuminative, for the reason that the scar is dim. However, they do not contradict the testimony of the witnesses that the left hand was almost severed. The record shows that there was enough of the fleshy part of the wrist and skin on the inside of the wrist to serve as a blood supply to the severed portion, and because of this it was possible to reunite the severed portion and by surgical skill save the hand and from outward appearance the hand would appear to be an unsevered hand. But because of the injury the hand has atrophied and is only one-half the size of a normal hand, and the plaintiff has no use of the hand.

It is the defendant's construction of this contract that, before a recovery can be had, the hand must be completely and wholly severed and detached from the arm at or above the wrist before liability accrues, that under the old forms of accidental policies the coverage was for "the loss of a hand," and that the court interpreted this provision to mean the loss of the use of the hand, but that the policies were rewritten so as to read "for the loss of one hand by severance at or above the wrist joint," and that the court in construing this provision holds that the severance must be entire and complete, leaving no semblance or vestige of the hand. There is authority supporting this contention of the defendant. In the case of Bowling v. Life Insurance Co., 39 Ohio App., 491, 177 N. E. 531, the court refers to the rewriting of these accidental policies, the court stating "After the rendition of decisions of this character, various insurance companies changed the phraseology of policies subsequently issued, so as to provide only for payment in the event of loss of a hand or foot by severance at or above the

wrist or ankle. This provision being specific in character, the courts have almost universally held that in these cases there could be no recovery unless there was amputation substantially as specified in the policy.''

It will be noted the court says ''amputation substantially as specified in the policy.'' In other words, there must be a loss of the use of the hand due to a substantial severance at or above the wrist. There are cases holding that, if a small finger of a hand remains, or a mutilated thumb, and that these remnants are useless and a detriment, still there can be no recovery because there was not an entire and complete severance. See Jones v. Continental Cas. Co., 189 Iowa, 678, 179 N. W., 203, 18 A. L. R., 1329-1341. The case of Metropolitan Casualty Insurance Company v. Shelby, 116 Miss., 278, 76 So., 839, construes a similar provision, but in that case the court held that there was no severance at all, that the hand was paralyzed and atrophied, but there had been no severance. The court then, quoting from a law dictionary, defined severance as ''removing anything from the realty, as trees, crops,'' etc. In the case under review the hand was practically severed at the wrist and was hanging only by the skin and a small amount of flesh, and it might be compared to a felling of a tree by a trespasser, when the falling trunk of the tree was attached to the stump by an unsevered fragment. In such a case would the court excuse the trespasser from his wrong on the theory that there had been no severance from the realty. The court thinks in such a case there was a severance within the laws of trespass, and that here there was a substantial severance within the terms of the contract. The severance, to an extent, has been repaired due to the skillfulness of the surgeon, but the entire loss of the hand was sustained by reason of the severance.

The court's view seems to be sustained by the weight of authority. We quote from the case of Moore v. Ætna Insurance Co., 75 Or., 47, 146 P., 151, 154, L. R. A., 1915D, 264, Ann. Cas., 1917B, 1005:

''In Fuller v. Locomotive Engineers' Mutual Life & Accident Insurance Association, supra [122 Mich., 548, 553, 81 N. W., 326, 48 L. R. A., 86, 80 Am. St. Rep., 598], the court, after citing authorities, remarks: 'These cases establish the proposition that where an insurance policy insures against the loss of a member, or a loss of an entire member, the word ''loss'' should be construed to mean the destruction of the usefulness of the member, or the entire member, for the purposes to which, in its normal condition, it was susceptible of application. In all of these policies the word ''loss'' is used, and it is the loss of the member that is in terms insured against. As indicated in the last authority cited, the attempts of the insurance companies to avoid this construction by so changing the policy that it reads, ''loss by severance of feet or hands,''

have failed; the courts holding, as before, that it is the loss of the use of the member which was the object of the contract.'

"1 Am. and Eng. Enc. Law (2 Ed.] p. 301, sums up the authorities as follows: 'It has been contended on behalf of the insurance companies that the provisions in regard to the "loss" of the hands and feet must be understood to imply an actual amputation or physical severance of these members from the body. But this view has not met with favor from the courts; it being held, that, to entitle the insured to recover, physical severance is unnecessary but it is sufficient if he has been deprived entirely of the use of his feet and hands as members of the body. And there can scarcely be any doubt as to the soundness of this view, for if the feet and hands cannot be used for the purposes of moving about or walking, or for holding and handling things, they are in fact lost as much as though actually severed from the body. Many of the companies have altered their policies so as to read, "the loss of feet or hands by severance" thereof; but this provision has been held to be intended to refer to the manner rather than to the exact physical extent of the injury.' " See, also, 1 C. J., p. 467; 14 R. C. L., section 493, p. 1318; 7 Couch on Insurance, p. 58.

This policy also contains the following provision:

"For sole and irrecoverable loss of sight of one eye . . . one-third of the said principal sum."

The Supreme Court has construed this provision to mean the loss of the use of the sight of one eye. The witness testified: "The sight is gone, I am conscious of light getting into the eye, and occasionally an object will flash without me being able to tell what it is. If I shut my right eye and hold my hand in front of me I cannot see it." The court said:

"The complainant has entirely lost sight in the eye, so far as usefulness goes, and we think this is the obvious meaning of and falls within the intent and spirit of the contract." Watkins v. U. S. Casualty Co., 141 Tenn., 583, 604, 214 S. W., 78, 84.

■ ■ The Watkins Case places this case in line with the majority holdings above quoted. It is not argued that there is no evidence that the plaintiff has lost the total use of the hand because of the severance at or near the wrist, but it is said that the construction of the policy means, not the loss of the use of the hand by a severance, but a total severance and dismemberment of the hand. And, since the hand has reunited and is now a part of the body, there could be no recovery notwithstanding the loss of the use of the hand. The court is of the opinion that, when the loss of the use of a hand is due to a severance at or above the wrist, that liability arises under the contract. The plaintiff and his witnesses have described the injury and his hand was exhibited to the jury, so it was for the jury to determine whether or not the total

and permanent use of the hand was destroyed by the severance at or near the wrist. This question should have been submitted to the jury. The judgment of the lower court is therefore reversed and the case remanded for a new trial.

Ailor and McAmis, JJ., concur.