**320**

Henry F. METZLER, Jr., Plaintiff,

v.

AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA,
Defendant.

United States District Court
E. D. Arkansas, Jonesboro Division.
Dec. 21, 1955.

Denver L. Dudley, Jonesboro, Ark., for plaintiff.

G. D. Walker, of Frierson, Walker & Snellgrove, Jonesboro, Ark., for defendant.

REEVES, District Judge.

The defendant seeks a summary judgment as provided by Rule 56(b), Rules of Civil Procedure in the Federal Courts, 28 U.S.C.A. This rule provides that:

"A party against whom a claim * * * is asserted * * * may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

Paragraph (c) of said numbered rule specifies the procedure to be followed in such cases, and then it is provided in said paragraph (c):

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

By stipulation of the parties, dated November 4, 1955, * * *

" * * * the Motion for Summary Judgment herein shall relate only to Count I of the complaint wherein the plaintiff claims the sum of $12,500.00 alleged to be due under the provisions of the policy relating to loss of hand, and no decision shall be entered as to the rights or liabilities of either party on Count II of the complaint relating to the plain-

tiff's claim for medical and hospital expenses."

It appears from the undisputed facts that at 4 a. m. on January 5, 1954, the defendant issued to the plaintiff its one day trip policy of insurance No. 247616, wherein, in "Part III," entitled:

"Accidental Death and *Dismemberment Benefits*" (italics mine)

it undertook to insure the plaintiff against:

"Loss of One Hand, * * *" in the sum of $12,500.

Said "Part III", however, contained a definition of the word "Loss", as follows:

" 'Loss' as above used with reference to hand or foot means complete severance through or *above the wrist* (emphasis mine) or ankle joint, * * *."

The title of "Part III" as above emphasized is important in construing the word "severance."

The affidavits and depositions supplied by the parties and the admissions of counsel on both sides at the arguments are to the effect that, on the same day of the issuance of the policy, and while same was in full force and effect, the plaintiff, who had been on a duck hunting trip, and while reaching into his automobile for decoys used in his enterprise, caused his shot gun to be accidentally discharged so that the entire load, at close range, passed through his left wrist in the vicinity of the joint. This resulted in damage to tendons, nerves, and blood vessels, as well as to the bones, and raised a surgical question as to whether the entire hand should be amputated. Medical opinion was adverse to amputation, and the plaintiff spent a period of more than six months in a hospital, receiving treatment for the damaged member.

In his deposition plaintiff said that the gunshot wound was "through the wrist," and then, at the time his deposition was taken, to-wit, on April 21, 1955, he said in answer to the question, "Which fingers can you move? ", "I can move all fingers." (Relating, of course, to the injured left hand.) And again, he answered a question:

"I can hold some things if I place it there. Not anything heavy. Just a package of cigarettes, or letters; something like that." (Referring to his left hand.)

Again he said of his left hand:

"It has gained strength—I don't know whether to call it strength or not. It has become tougher and it is not as tender. As far as picking up anything heavy, I don't believe I could."

And, in answer to a question as to the appearance of his hand:

"Q. Insofar as the physical appearance of your hand is concerned, it doesn't differ a great deal from the other hand, except your other hand is more tougher or calloused from use?

"A. Outside of scars on my wrist, of course.

"Q. I am talking about the hand itself. If the wrist were covered up and your hand in a resting position, it could not be told at a casual glance that you had an injury?

"A. No sir."

It appears that the plaintiff was a plumber, and while his hand, he said, was useless in that occupation, yet he answers this question:

"But you do use it in personal matters, dressing or holding papers and cigarettes, such as that?

"Yes, I would say some use. Sure."

Other testimony on the part of the plaintiff was to the same effect.

Both parties submitted affidavits of physicians who had treated the plaintiff, and others, who had examined him:

Dr. John T. Gray, a physician at Jonesboro, the home city of the plaintiff, said, among other things:

"The patient can actively extend and flex the distal interphalangeal joints of the left index and long finger fairly normally, * * *.

"There is good adduction of the thumb and all fingers, and good intrinsic muscle power; indicating intact radial nerve."

Dr. Gray said further:

"Prolonged hospitalization at Kennedy Hospital has given this patient a fairly serviceable hand which might otherwise have required amputation."

"It is believed this patient has 50% permanent partial disability to the left hand and forearm below the elbow and that it is fairly stable and will not decrease."

The plaintiff submitted the affidavit of Dr. Horace R. Murphy, of Little Rock, Arkansas, who had treated the plaintiff while he was in the hospital. Dr. Murphy said in his affidavit:

"When seen initially, a through and through wound existed just above the wrist, which permitted the passage of several instruments grouped together."

Again:

"There is inability to completely extend the fingers but the radial and ulnar extensors of the wrist are present. The patient has good MP joint motion but has some restriction of motion at the middle finger joints approximately 20 to 30 degrees."

Again:

"Considering the initial injury, the patient feels as though he has a good result. The writer feels as though he could have an improved hand."

The plaintiff also submitted the deposition of Dr. Dana M. Street, an orthopedic surgeon at Kennedy General Hospital, Memphis, Tennessee. Dr. Street testified on November 18, 1955:

"I don't think we seriously considered taking it off right away." (Referring to the left hand.)

And, again:

"Circulation to the hand, however, was fortunately intact to a large extent."

Again:

"Well, the hole was about the size of a half dollar on both sides but you couldn't see that much daylight through it. It would be smaller than that in the center."

Dr. Street told of the various surgeries performed on the left hand and gave the dates when each was performed. In answer to a question as to plaintiff's convalescence, he said:

"I would say he had about normal recovery. He still has considerable limitation of wrist motion and finger motion."

And, again:

"He had enough remaining in his circulation for the hand to survive and also the flexor tendons remaining would have some function in the hand. I believe he would still have had a sufficiently usable hand, that it would not require amputation even without the operations performed although we hope, and I believe, we have improved his function by what was done."

In answer to a question for an opinion as to whether or not the wound was equivalent to a severance, the doctor said:

"Well, in my opinion, it would not be the equivalent of severance in that some functioning elements are still intact, namely tendons which work the fingers and thumb and certain nerve elements, namely the ulna nerve."

And, then, on cross-examination, the doctor said:

"As near as we can tell the arteries were not devitalized; one may have been severed, but from the fact that the circulation was sufficient, we know that both were not severed."

Again:

"Q. And there was a sufficient amount of the bone structure that a satisfactory union of the remaining bone could be effected?

"A. The union was effected; joint motion, however, was considerably limited, etc."

The foregoing is illustrative of the admitted proof on the factual issue as presented by earnest counsel on both sides. It was the theory of diligent counsel for plaintiff that the hand was in effect severed, but that the wrist had been reconstructed by efficient surgery, and that it is the duty of the court, in the light of the authorities, to hold that there was a severance under the contract.

1. It is to be noted that the loss, as defined in the insurance contract, "means complete severance through or above the wrist * * *." This definition is reinforced by the word "dismemberment" in the title of Part III. The word "complete" was doubtless inserted in the policy in the light of court decisions previously rendered.

2. The only case that would in any way support the contentions of plaintiff's able counsel is that of King v. Metropolitan Life Ins. Co., 20 Tenn.App. 246, 97 S.W.2d 651.

In that case the hand of the plaintiff had been severed by a ripsaw. The hand was still attached to the arm by a small fleshy part of the wrist and skin on the inside of the wrist, and this served to furnish a blood supply to the severed portion.

By surgical skill the hand was reunited so that it appeared to be an unsevered hand. "But because of the injury the hand has atrophied and is only one-half the size of a normal hand, and the plaintiff has no use of the hand." 97 S.W.2d loc. cit. 653.

3. It will be observed that the situation here is far different and that plaintiff has considerable use of his injured left hand, and that it has life and vitality.

In Pilling v. Metropolitan Life Ins. Co., the Court of Appeals for the Middle Section of Tennessee, in an opinion reported in 24 Tenn.App. 639, 148 S.W.2d 41, reversed the judgment or decree of a lower or trial court in favor of the plaintiff. In that case the plaintiff was the victim of a gunshot wound, damaging his left hand, as in this case. And the court said, 148 S.W.2d loc. cit. 43:

"There are numerous cases which hold that the loss of a member, such as a hand or foot, without more specific definition, means the loss of the beneficial use of the member. * *

"But the insurance companies, to meet these decisions, have generally in their later forms of policies contracted for the payment of the indemnity for the loss of a hand or a foot 'by severance at or above' the wrist or ankle joint, or words of like import; and in the cases construing this language the courts have held with practical unanimity that there can be no recovery in the absence of the physical severance of the injured member from the body."

Numerous cases are cited from a number of states in support of the opinion, and all are to the same effect. The court specifically and approvingly referred to the Muse case, Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 76, 125 A.L.R. 1075, and commented as follows:

"* * * the Supreme Court of Louisiana, after reviewing many of the cases so holding, reached the conclusion that 'the overwhelming weight of authority is to the effect that, where an insurance policy provides indemnity, for the "loss of a hand", or the "loss of a foot", or the "loss of an arm", and provides in the policy a definition or a specific statement as to what shall constitute a loss of such member, effect must be given to this qualifying definition or explanation.'"

It is useless to multiply authorities. All have been carefully examined but they are, without exception, to the same effect.

4. In the argument counsel sought to differentiate between "amputation" and a "severance." Amputation, as defined in 3 C.J.S. p. 1060 means:

"The act of amputating; especially, the operation of cutting off a limb

324

or other part of the body, or a portion of it."

Whereas, 80 C.J.S. p. 128 defines severance as follows:

"The word 'severance' is defined generally as meaning the act of severing, dividing, or separating; the state of being severed or separated; the state of being disjoined or separated; partition; separation; the removal of anything."

The distinctions in these definitions, if any, are not deemed important or applicable in this case. Amputation ordinarily applies to a surgical operation and a severance would apply, as in this case, to an accident.

 Upon the facts as outlined there was not a "complete severance" within the purview of the policy, and the defendant's motion for a summary judgment should be sustained. It will be so ordered.