213 So.2d 128 (1968)
George F. MATTHEWS, Plaintiff-Appellant,
v.
STANDARD LIFE INSURANCE COMPANY, Defendant-Appellee.
No. 2396.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1968.
*129 Howard N. Nugent, Jr., Alexandria, and McLure & Ford, by William M. Ford, Alexandria, for plaintiff-appellant.
Provosty, Sadler & Scott, by Richard B. Wilkins, Jr., Alexandria, for defendant-appellee.
Before TATE, CULPEPPER and HOOD, JJ.
HOOD, Judge.
Plaintiff, George F. Matthews, instituted this suit to recover benefits, with penalties and attorney's fees, alleged to be due him under the provisions of a health and accident insurance policy. The suit was instituted against Standard Life Insurance Company, the insurer in that policy. On application of defendant, a summary judgment was rendered by the trial court rejecting plaintiff's demands. Plaintiff has appealed.
There is no genuine issue as to any material fact. The record shows that on April 23, 1966, plaintiff sustained a serious injury to his left ankle and foot while working for Texada-Bailey Company, Inc. At that time there was in effect a group policy of insurance which had been issued by defendant to Texada-Bailey Company, Inc., as the employer, in favor of the insured's employees. Plaintiff, as an employee of that company, was insured under that policy. Among other obligations contained in the policy, the defendant agreed to pay plaintiff the sum of $2,500.00 for the loss of one foot as the result of an accident, provided that the loss was sustained within a period of 90 days after the accident occurred.
On the above mentioned date plaintiff fell as he alighted from a horse. He landed on his left lower extremity in or very near a cesspool in the back of a neighbor's home. As a result of this fall he sustained an open fracture, a trimalleolar, of the left ankle. The tibia and fibula were broken, and the foot was dislocated laterally, going up the side of the leg with the broken end of the tibia protruding through the skin and actually sticking down into the cesspool.
He received medical attention almost immediately, and he was treated by Dr. P. M. Davis, Jr., an orthopedic surgeon, for several months after the accident occurred. Dr. Davis cleaned the injured ankle and foot, he fixed the fracture with a screw and he closed the skin, except that a tube was left in the leg to irrigate the wound. An infection set in within two or three days, making it necessary for extensive treatment to be administered over a long period of time. This treatment included the opening of the leg for drainage and allowing it to remain open for several days, surgery on at least four different occasions, the insertion of a pin through the foot into the ankle, the application of a cast and the performance of some skin grafts. After treating the foot, leg and ankle for several months, Dr. Davis concluded on September 29 that the leg would have to be amputated, and on October 4, 1966, he performed the required surgery amputating plaintiff's left leg two or three inches above the ankle. A guillotine type amputation was performed at that time to allow the leg to drain and to recover sufficiently *130 from the infection to permit an ordinary amputation to be accomplished. A few weeks later, and according to the doctor's plan, another amputation was performed on the same leg, five or six inches below the knee. It is apparent from the foregoing review of the facts that the first amputation or severance of the foot took place more than five months after the accident occurred.
After the foot had been severed, plaintiff demanded payment of the benefits provided in the policy for the loss of one foot. Defendant refused to comply with that demand, assigning as reasons therefor that the "loss" of the leg did not occur until more than 90 days after the date of the accident.
The trial judge concluded that the term "loss," as used in the policy with respect to hands and feet, means the loss of such a member by severance, and that plaintiff is not entitled to recover under the policy because the amputation of the foot did not actually occur within 90 days of the date of the accident.
Plaintiff contends that the terms "loss" and "severance," as used in the policy, are not synonymous, that he never regained the use of his foot subsequent to the day of the accident, and that he thus suffered a "loss" of the foot as of that day.
The policy under which plaintiff seeks to recover here contains the following pertinent provisions:
"Upon receipt of notice and due proof, as required herein, that any employee, while insured for Accidental Death, Dismemberment and Loss of Sight Benefits under the policy, shall have sustained any of the losses listed in the following Table of Losses as the direct result of accidental bodily injury and independently of all other causes, as evidenced by a visible contusion or would on the exterior of the body (except in the case of drowning or internal injuries revealed by an autopsy), and the date of occurrence of such injury is not more than ninety days prior to the date such loss was sustained, the Company Agrees to Pay, subject to the terms and conditions hereof, the amount of insurance specified for such loss in the Table of Losses, in accordance with the Full Amount of Insurance applicable to such employee as specified in the Schedule of Benefits.

TABLE OF LOSSES
In the Event of Loss of:
..........
One Foot___One Half the Full Amount
 of insurance.
..........

With respect to hands or feet, "loss" means dismemberment by severance at or above the wrist or ankle joint." (Emphasis added.)
The general rule is that where an accident policy provides indemnity for the "loss" of a member, without any further definition or statement as to what shall constitute such a loss, then the word "loss" will be construed to mean the loss of use of the member. But, where the policy provides indemnity for the "loss" of a member, and it also contains a definition or statement as to what shall constitute a loss of such member, then effect must be given to this qualifying definition or explanation, and the word "loss" must be construed as provided in the policy. Muse v. Metropolitan Life Ins. Co.,193 La. 605, 192 So. 72 (1939); Westenhover v. Life & Casualty Ins. Co. of Tennessee, 27 So.2d 391 (La. App.2d Cir. 1946, cert denied); Appleman, Insurance Law and Practice, Volume 1A, Section 702, pp. 687-689; 45 C.J.S. Insurance § '900b, p. 986; 29A Am.Jur., Insurance, Sections 1510, and 1511, pp. 616-618.
An insurance policy, of course, is the contract between the parties, and, like all other contracts, it is the law between them. Courts are bound to give legal effect to all such contracts according to the *131 true intent of all the parties, and that intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences. LSA-C.C. arts. 1901 and 1945; Westenhover v. Life & Casualty Ins. Co. of Tennessee, supra; Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734 (1961); Paul Foshee Dusting Company v. Byron, 158 So.2d 345 (La.App.3d Cir. 1963).
In Muse v. Metropolitan Life Ins. Co., supra, the plaintiff claimed benefits under a group accidental death and dismemberment insurance policy which provided coverage for "Loss of one hand by severance at or above wrist-joint." He alleged that all bones in his hand were "fractured, broken and crushed," and that his hand was virtually "torn into pieces." The third and little fingers were "torn completely off," and the thumb and first and second fingers were "left hanging by a small amount of skin attached to the palm." The thumb and first and second fingers "were sewed back to the hand," but his hand was left in such condition that he "has no control over or use thereof." The plaintiff contended that it was the loss of use of the hand that was covered by insurance, and that where by actual severance, either in whole or in part, the entire use of the member is wholly and totally lost, a liberal construction in line with the logical intention of the parties to the insurance contract should be applied, and recovery should be allowed. Our Supreme Court affirmed the judgment of the trial court dismissing the suit on an exception of no cause of action. The court held that since the policy provided that indemnity was to be made only for loss of the hand "by severance," no benefits would be due unless there was a severance of the entire hand. The following pertinent language was used by the court:
"* * * where an insurance policy provides indemnity for the `loss of a hand', or the `loss of a foot', or the `loss of an arm', and provides in the policy a definition or a specific statement as to what shall constitute a loss of such member, effect must be given to this qualifying definition or explanation."
In Westenhover v. Life & Casualty Insurance Company, supra, the petitioner claimed benefits allegedly due under an insurance policy for the loss of a leg. The accident occurred on August 24, 1945, and the leg was amputated more than two months later, on November 2, 1945. The insurance policy provided that "no sum shall be payable for the loss of any member except for total and permament severance at or above the ankle or wrist joint or joints * * *," and that "no payment will be made hereunder, unless death or the loss of the member or members or eyesight occurs within thirty days from the date of accident." The Second Circuit Court of Appeal, reversing the judgment of the trial court, held that plaintiff was entitled to recover for the loss of the leg. The Court found, however, that under the provisions of the policy it was not necessary that the amputation occur within the thirty day period, but only that the loss take place within that time. The Court said:
"The provision of the policy at issue does not restrict the meaning of the loss of a member to amputation. It simply restricts liability for payment for the loss of a member to those cases in which such loss has been evidenced by amputation. Nor does the policy require that amputation, total and permanent severance, take place within thirty days, but simply that the loss of the member shall occur within thirty days from the date of the accident."
"With regard to the clause of the policy under examination in this case, we find no ambiguity since the plain wording recognizes a distinction between the loss of a member and loss by amputation, and specifically provides that it is the loss which must occur within thirty days from the date of the accident and not the amputation."
The Court indicated that plaintiff would not have been permitted to recover for the *132 loss of the leg if the policy had specified that benefits would be payable only if the accident necessitated amputation within the thirty day period. In that connection the court said:
"The defense here urged would be sound if the policy had provided that no sum should be payable under the terms thereof except for the loss of a member, as the result of an accident necessitating amputation of said member within whatever period might have been arbitrarily established."
There is no ambiguity in the insurance policy involved in the instant suit. The policy specifically provides that indemnity for the loss of a foot will be due only if the "loss" occurs within ninety days of the accident, and that "loss" means "dismemberment by severance" at or above the wrist or ankle joint. The policy in this suit, therefore, unlike the contract in the Westenhover case, specifically provides that benefits will be due only if dismemberment by severance occurs within 90 days of the occurrence of the injury. We think the qualifying definition or explanation contained in the policy must be given effect, and that defendant thus is not obligated to indemnify plaintiff for the loss of a foot since the actual amputation or severance of the foot did not occur within the required ninety day period.
This conclusion is in accord with the decisions rendered in both of the Louisiana cases which have been discussed, and we think it also is consistent with the weight of authority in other jurisdictions. In Pilling v. Metropolitan Life Ins. Co., 24 Tenn.App. 639, 148 S.W.2d 41 (1941), for instance, the policy provided indemnity "for the loss of one hand by severance at or above the wrist joint." As a result of a shotgun injury, a substantial portion of plaintiff's hand and wrist were completely severed, and the remaining portion of the hand subsequently withered and atrophied. The Court of Appeals of Tennessee rejected plaintiff's demands for benefits under the policy because there had not been complete severance of the hand. The Court said:
"There are numerous cases which hold that the loss of a member, such as a hand or foot, without more specific definition, means the loss of the beneficial use of the member."
"But the insurance companies, to meet these decisions, have generally in their later forms of policies contracted for the payment of the indemnity for the loss of a hand or a foot `by severance at or above' the wrist or ankle joint, or words of like import; and in the cases construing this language the courts have held with practical unanimity that there can be no recovery in the absence of the physical severance of the injured member from the body."
The Supreme Court of Oklahoma, in Great Northern Life Ins. Co. v. Tulsa Cotton Oil Co., 182 Okl. 107, 76 P.2d 913 (1938), rejected the petitioner's demands because there had not been a complete severance of the hand, and in so doing the court said:
"Where the insurance contract specifically provides that the loss of the hand must be by dismemberment between the wrist and elbow joints, the plain provisions of the contract will be upheld and enforced by the court, and the showing of any injury less than that will not suffice to bring the injury within such provision."
In Martin v. Continental Casualty Company, 157 F.Supp. 259 (D.C.Miss. 1957), the policy provided indemnity for the loss of a foot within 100 days after the date of the accident, but it defined "Loss" as meaning "complete severance." The court rejected plaintiff's claim for benefits for the loss of a foot where the actual amputation occurred more than 100 days after the accident.
*133 In Orenstein v. Preferred Acc. Ins. Co. of New York, 163 N.W. 747 (Minn. 1917), the policy provided indemnity "for loss of either foot by severance at or above the ankle," within 90 days after the date of the accident. Plaintiff's claim for indemnity was denied because the amputation did not occur until about 120 days after the injury was sustained.
In Clark v. Federal Life Ins. Co., 193 N.C. 166, 136 S.E. 291 (1927), the policy provided benefits for the loss of a foot within thirty days of the accident, and it defined "loss" as being "severance at or above the ankle or wrist joints." The petitioner's claim for indemnity was rejected because the actual amputation or severance of the foot was not accomplished until about 50 days after the accident occurred.
Other cases which we have considered, and which we think are pertinent to the issues presented here are: Huffman v. Occidental Life Insurance Company of Raleigh, 264 N.C. 335, 141 S.E.2d 496 (1965); American Casualty & Life Co. v. McCuistion, 202 S.W.2d 474 (Texas, 1947); Hardin v. Continental Casualty Co., 195 S. W. W. 653 (Texas, 1917); Wiest v. United States Health & Acc. Ins. Co., 186 Mo. App. 22, 171 S.W. 570 (1914); Metropolitan Casualty Ins. Co. v. Shelby, 116 Miss. 278, 76 So. 839 (1917); Metzler v. American Casualty Company of Reading, Pennsylvania, 137 F.Supp. 320 (D.C.Ark. 1955); Continental Casualty Co. v. Bows, 72 Fla. 17, 72 So. 278 (1916); and Adair v. General American Life Ins. Co., 124 S.W.2d 657 (Mo. 1939). But see, King v. Metropolitan Life Ins. Co., 20 Tenn.App. 246, 97 S.W.2d 651 (1936).
We concede, as pointed out by plaintiff, that in Interstate Life & Accident Co. v. Waters, 213 Miss. 265, 56 So.2d 493 1952, the Supreme Court of Mississippi allowed the plaintiff to recover indemnity for the loss of a leg even though the amputation was not accomplished until after the thirty day period provided in the policy had elapsed. In that case, however, the medical decision to sever plaintiff's leg was made within one week after the accident occurred, but the actual amputation had to be delayed more than thirty days because of plaintiff's weakened condition and the risk which would be involved in performing surgery on him sooner. Those circumstances are not present in the instant suit. Here, the treating physician felt that the foot could be saved, and it is for that reason that the surgical amputation of the foot was delayed. In view of the difference in facts and circumstances, we do not consider the Waters case applicable here.
We find no merit to the argument that plaintiff sustained a "traumatic severance" of his foot on the day the accident occurred, and thus that he is entitled to the indemnity provided in the policy. It is true that both the tibia and the fibula were fractured, all of the ligaments surrounding the ankle were torn loose and everything was stripped from the end of the tibia where it protruded about two inches through the foot. The blood vessels and the neurovascular bundles in the front and back of the leg were not damaged, however, the tendons were not torn, the circulation in the foot was not impaired and the skin remained intact except for the place where it was punctured by the fractured bone. Under those facts, we conclude that there was not a "dismemberment by severance" of the foot until the surgical amputation was performed on October 4, 1966.
Our conclusion is that plaintiff is not entitled to indemnity under the policy for the loss of a foot, since the actual severance of the foot did not occur until after the ninety day period provided in the policy had elapsed. The judgment of the trial court, therefore, must be affirmed.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.