**TRAVELERS INSURANCE COMPANY, Allstate Life Insurance Company, and Continental Insurance Company, Plaintiffs–Appellees,**

v.

**Rogell BURCHETT, Defendant–Appellant.**

**No. 87–5328.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 7, 1988.

Decided March 9, 1988.

Joe F. Childers (argued), Shepard & Childers, Phillip J. Sheperd, Lexington, Ky., for defendant-appellant.

John Martin, Jr. (argued), Brown and Williamson Office Tower, Louisville, Ky., for plaintiffs-appellees.

Before MERRITT, KENNEDY, and KRUPANSKY, Circuit Judges.

PER CURIAM.

Defendant-appellant Rogell Burchett (Burchett) appealed from the district court's grant of summary judgment in favor of plaintiffs-appellees Travelers Insurance Company, Allstate Life Insurance Company, and Continental Insurance Company (Insurers) in this action commenced by the Insurers seeking an order declaring that Burchett was not entitled to proceeds under accidental death and dismemberment policies. The record disclosed the following facts.

Burchett was insured against accidental death and dismemberment under three separate insurance policies issued by the Insurers. Each policy contained a definition of "loss" within its description of dismemberment coverage. The Travelers policy provided:

Loss shall mean, with regard to hands and feet, dismemberment by severance through or above wrist or ankle joints; with regard to eyes, entire and irrevocable loss of sight.

The Allstate policy provided:

'Loss' as used with reference to hand or foot, means severance at or above the wrist or ankle joint, and as used with reference to eye, means total and irrevocable loss of entire sight of eye.

The Continental policy provided:

'Loss' shall mean with regard to hands and feet actual severance through or above wrist or ankle joint; with regard to eyes, entire and irrevocable loss of sight; with regard to leg or arm, actual severance through or above knee or elbow joint; ...

On June 25, 1985, Burchett was involved in an automobile accident and suffered a severe injury to his left arm. His injury was described as an "incomplete amputation," i.e., "it was being held by skin, subcutaneous tissue, the nerve and the artery, on the radial side and that's about it ...," for all intents and purposes [it] was a functional amputation." Burchett underwent several surgical operations in which tendons, muscles, and skin from his back were grafted into the arm. The record did not disclose the extent to which Burchett has since regained the use of his arm, but one of Burchett's physicians stated that "we've left him with an arm which is marginally better than a prosthesis...."

Burchett filed claims with each of the three Insurers claiming entitlement to proceeds under the dismemberment coverage of the policies. Each of the Insurers denied the claims because Burchett's arm was never physically severed from his body. Travelers thereafter commenced this diversity action for declaratory relief seeking an order determining that it was not liable to Burchett under the terms of the policy. Allstate and Continental later intervened as plaintiffs, and by agreement of the parties, the matter was referred to a magistrate for decision. Burchett then filed counterclaims alleging bad faith denial of coverage by each of the three Insurers.

The Insurers moved for partial summary judgment on the issue of coverage, and on December 8, 1986, the district court granted the motion. The Insurers then moved for summary judgment on Burchett's counterclaims, which motion was granted on February 20, 1987. Final judgment was entered accordingly, and Burchett thereafter commenced this timely appeal asserting only that the district court incorrectly concluded as a matter of law that his injury was not covered under the terms of the three policies.

In *Fowler v. Brotherhood of R.R. Trainmen*, 253 Ky. 786, 70 S.W.2d 669 (1934), the plaintiff suffered a severe injury to his hand resulting in the amputation of several fingers and the loss of the use of his hand. He sought recovery under the constitution of his union which provided insurance coverage against "the amputation or severance of an entire hand at or above the wrist joint...." 253 Ky. at 787, 70 S.W.2d at 670. The plaintiff asserted that he was

entitled to proceeds because he had *"lost the use* of the whole hand and arm...." *Id.* (emphasis in original). Kentucky's highest court rejected this assertion:

> We are mindful of the rule that in construing policies of insurance and benefit certificates wherein the language is uncertain or ambiguous, the courts will adopt that construction more favorable to the insured. But the rule of liberal construction does not mean that the court may add to or strike from the conditions of the policy and thereby make a contract for the parties which they did not make for themselves.
>
> It is our view that the language used in the policy is plain and unambiguous. The language employed could not be construed to mean that the appellee insured appellant against the *loss of the use of the hand* without the loss of the hand by physical severance or amputation "at or above the wrist joint." It does not insure against disability to earn money or to pursue any particular occupation.

253 Ky. at 790, 70 S.W.2d at 671. (citations omitted) (emphasis in original). *See also Brotherhood of R.R. Trainmen v. Wilkins,* 257 Ky. 331, 78 S.W.2d 6 (1935) (quoting *Fowler, supra*). These cases clearly indicate that under Kentucky law, which this court sitting in diversity is required to apply, *Beams v. John Hancock Mutual Life Ins. Co.,* 325 F.2d 887 (6th Cir.1964), the term "severance," as used in the insurance contracts in question, is unambiguous and does not include the "loss of use" of the limb. Rather, it means actual physical severance.

Burchett nevertheless argued that the definition was ambiguous because the term "severance" was not defined in the contracts as "actual physical severance." Accordingly, construing the insurance contracts in his favor, the term should have been interpreted to include what he calls "functional severance," i.e., the loss of the use of the limb. Burchett relied upon decisions from other jurisdictions in which the courts concluded that the term severance was ambiguous, and therefore construed the term favorably to the insured to include "functional severance." *See, e.g. King v.*

*Metropolitan Life Ins. Co.,* 20 Tenn.App. 246, 97 S.W.2d 651 (1936). The law in Kentucky, however, unambiguously indicates that "severance" means actual physical severance. *See Reid v. Life Ins. Co. of N. Am.,* 718 F.2d 677, 680–82 (4th Cir.1983) (citing *Wilkins, supra,* for the proposition that "severance," as used in dismemberment policies, "clearly and unambiguously requires an actual cutting off of the member at the place indicated"). Accordingly, the judgment of the district court is hereby AFFIRMED.

MERRITT, Circuit Judge, dissenting.

The majority's rationale for construing the insurance policy against this man who has been crippled for life is shortsighted. It is a company oriented approach that erroneously restricts the individual claimant's rights to insurance.

Our responsibility in a diversity case is not simply to apply in a crabbed and one-sided way what a state's courts have done in a given area of law in the past. Instead, we are to predict what the state's highest court would do if faced with the question at issue. If there is binding state precedent on the issue, and no persuasive indication that the prior rule has been placed in question or is undergoing reformulation within that state's courts, then of course we are bound to apply the previous precedent. But the task always is predictive. *See Bagwell v. Canal Insurance Co.,* 663 F.2d 710, 712 (6th Cir.1981). To do otherwise would undermine the *Erie* doctrine by inviting forum shopping—encouraging one party seeking law reform to litigate in state court while encouraging an opposing party favored by tenuous, but extant, state precedent to litigate in federal court. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 462–65, 87 S.Ct. 1776, 1781–83, 18 L.Ed.2d 886 (1967); *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 202–05, 76 S.Ct. 273, 275–77, 100 L.Ed. 199 (1956); 19 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4507.

The majority and the District Court both have professed themselves bound by two 50–year–old cases from the Kentucky

courts, but neither of the two precedents cited by the majority is controlling, because neither faced the question of policy interpretation presented here.

The insured in *Fowler v. Brotherhood of Railroad Trainmen,* 253 Ky. 786, 70 S.W. 2d 669 (1934), was to be considered disabled and thereby compensable under the terms of the policy if he were to "suffer the amputation or severance of an entire hand at or above the wrist joint." 70 S.W.2d at 670. He alleged in his complaint that the severance or amputation of more than half of his palm and several fingers *"below the wrist joint"* had resulted in "equivalent to or greater than" the disability that would be brought about by amputation or severance "at or above the wrist joint." *Id.* (emphasis added). Thus, in *Fowler* Kentucky's highest court rejected the contention that severance below a specified anatomical location can be deemed the equivalent of severance "at or above" that site.

In *Brotherhood of Railroad Trainmen v. Wilkins,* 257 Ky. 331, 78 S.W.2d 6 (1935), a like contention was rejected.

The injury of the plaintiff in the instant case,[1] by contrast, presents the question whether an injury caused by an *incomplete* severance of a limb that *is* above the required anatomical site and that produces functional loss substantially equivalent to that produced by a total severance of that limb, should be deemed a "loss" produced by a "dismemberment by severance" (Travelers), or by a "severance" (Allstate), or by an "actual severance" (Continental). To frame the interpretive issue more precisely: Does the term "severance" define not only the manner but also the extent of the injury? There is no Kentucky case law on this question.

Kentucky law *does* hold to the general rule that, for obvious reasons, ambiguous terms in insurance policies are to be construed against the drafter and in favor of the insured. *See State Farm Mutual Auto Insurance Co. v. Shelton,* 413 S.W. 2d 344 (Ky.1967). None of the three policies define the term "severance" or "sever." Dictionary definitions emphasize the *manner* of injury but leave room for ambiguity on the *extent* required for a "severance."[2]

When existing state precedents leave a federal court in doubt about what view the state's highest court would take on an issue of first impression, it is appropriate to examine the views of the courts in other jurisdictions. *See Bailey v. V & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985). Modern case law from other jurisdictions can provide guidance as to what a modern Kentucky court might do in this case.

In *King v. Metropolitan Life Ins. Co.,* 20 Tenn.App. 246, 97 S.W.2d 651, 654 (1936), surgeons reattached a limb severed totally except for a little skin. "Severance" was held to refer to "the manner rather than to the exact physical extent of the injury." *Accord, Huff v. Vulcan Life & Accident Ins. Co.,* 206 So.2d 861, 864 (Ala.1968).

In *Reliance Ins. Co. v. Kinman,* 252 Ark. 1168, 483 S.W.2d 166, 170 (1972), the femur bone of the leg was completely severed and found lying in a nearby ditch. The rest of the lower leg was connected only by nerve, artery, muscle and skin. The insurer refused to pay because the leg was not finally amputated until some 18 months after the accident, after elaborate attempts at reattachment, grafting and reconstruction ultimately failed. The Arkansas Supreme Court, however, held that the

1. According to appellant's doctor, Mr. Burchett suffered a "functional amputation" which "jacknifed" his arm open, disrupted the bone, and, except for some tissue left on one side, left the "whole arm ... almost off." App. 15. In other words, the arm was cut through except for what little was hanging as if by a thread. At most hospitals, what remained would have been amputated. What does remain after the surgeons' attempt to salvage what they could is "an arm which is just marginally better than a prosthesis." App. 24.

2. Webster's New Twentieth Century Dictionary (Unabridged 1968) defines "sever":

1. to put or *divide in two,* especially by violence; to separate, as by cutting or rending;

....

3. to separate; to disjoin, as things distinct *but united by some tie.*

"Sever" is defined in neither of the two standard medical dictionaries, Stedman's or Dorland's.

policy term "actual severance" was ambiguous and granted recovery. The court observed that "loss" by "actual severance" is a "clearly ambiguous" term because it could be interpreted to mean "physical severance" in one instance and "functional severance" in another, whichever appeared to be most beneficial to the insurer. For example, if a leg were completely severed and successfully reattached with restoration of function, there would be no loss of use despite a total physical severance. The court noted that

> [h]ad the (surgical) miracle occurred certainly the [insurer] would have contended there was no liability.... Given such an ambiguity, it is axiomatic that the provision should be construed in favor of the insured since the [insurer] wrote the policy and selected its own terminology. This litigation may well be the result of policy language which was drafted long in advance of modern and more recent medical technology and skills.

483 S.W.2d at 171. *See also Mifsud v. Allstate Insurance Co.*, 116 Misc.2d 720, 456 N.Y.S.2d 316 (Cir.Ct.1982) (distinguishing irreparable "amputation" from functional "severance"); *see generally* Annot., 51 A.L.R. 4th 156.

Following the approach used by these courts, I would interpret the ambiguous term "severance" to refer to the manner rather than the extent of the injury. A "severance," thus, would be an injury that results in a forcible tearing or disruption of the affected limb that results in substantial disunion of the limb and substantial loss of function of the portion distant to the site of disruption.

If appellant's arm had been totally severed, the insurers would be obligated to pay. If his doctors had elected to complete surgically the amputation that had nearly been accomplished traumatically, the insurers likewise would have been obligated to pay. But because appellant's doctors, operating at "the forefront of medical practice in order to do it," App. 24, attempted to save the tatters of the arm that remained, even though the functional result is the same, the majority denies recovery. The

unfortunate result is that formerly "aggressive" surgeons like Dr. Briedenbach here will have to think twice in the future about trying to save badly injured limbs and "maybe ... have to start questioning these people about their insurance policies before we attempt any surgery." App. 24. I do not believe that Kentucky law is so shortsighted.

It might be argued that, were we to interpret the term "severance" in the more liberal fashion that I have recommended, insurers in the future would defeat recovery simply by tightening up their language. For example, "loss by severance" might be redrafted to read "loss by a total physical separation of the limb into two pieces, occurring at or above the wrist joint and resulting in irreparable and total loss of function." I see no problem in such a development. Such clear and unambiguous language would declare the intention of the parties and provide the insured with unambiguous notice of the protection for which he is contracting—notice that the appellant here lacked.