577 So.2d 1184 (1991)
Bobby JEFFERSON, Plaintiff-Appellee,
v.
MONUMENTAL GENERAL INSURANCE COMPANY, Defendant-Appellant.
No. 22203-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1991.
*1185 McCoy & Hawthorne, Ltd. by Dee A. Hawthorne, Natchitoches, for defendant-appellant.
Bobby L. Culpepper, Jonesboro, for plaintiff-appellee.
Before NORRIS, LINDSAY and BROWN, JJ.
LINDSAY, Judge.
The defendant, Monumental General Insurance Company (the successor of Cumberland Life Insurance Company), appeals from a summary judgment in favor of plaintiff, Bobby Jefferson. Mr. Jefferson was allowed to recover under the provisions of an accident policy for the partial amputation of his left foot. For the following reasons, we find that summary judgment is inappropriate in this case. Therefore, we reverse the judgment and remand the case to the trial court for further proceedings.

*1186 FACTS
In August of 1988, the plaintiff was involved in a serious automobile accident. As a result of this accident, the plaintiff sustained multiple injuries, including a severely mutilated left foot. Shortly thereafter, a Chopart amputation of the left foot was performed. In the operative report describing the procedure performed on August 17, 1988, the surgeon, Dr. James L. Etheredge, described the amputation as being "at the talonavicular and calcanocuboid level...."
The ankle joint is formed by three bonesthe tibia (the inner of the two leg bones), the fibula (the outer of the two leg bones), and the talus (the highest of the bones in the back of the foot). The talus sits above and on the calcaneus (heel bone). A Chopart amputation is defined as an amputation in which the cut removes all bones of the foot except the calcaneus and the talus. See diagram below which was included in the defendant's brief:
 Ankle:
 1. Tibia
 2. Fibula
 3. Medial malleolus
 4. Lateral malleolus
 5. Calcaneus 
 6. Talus
 7. Navicular
 8. Cuboid
 9. Ankle joint
10. Chopart amputation
Following the surgery, the plaintiff made demand upon his insurance company for recovery under the provisions of the accident policy at issue. The policy provides for recovery of one-half the principal sum of the policy for loss of one member. Loss is defined as "with regard to foot, physical separation at or above the ankle joint." The documents submitted to the insurance company pursuant to this claim included a form filled out by the plaintiff and his doctor. In the physician's statement, Dr. John J. Ferrell answered the following question: "5. IF LOSS OF LIMB, WAS IT THROUGH OR ABOVE WRIST OR ANKLE JOINT? X NO __ YES."
As a result of the documentation supplied to it, the insurance company denied the claim on the basis that the amputation was not at or above the ankle joint.
On July 6, 1989, the plaintiff filed suit against the insurance company. In addition to his claim for $25,000 under the policy, the plaintiff also sought interest from August 6, 1988, as well as penalties and attorney fees. Subsequently, both parties filed motions for summary judgment. A hearing on the motions was held on April 2, 1990.
In support of his motion for summary judgment, the plaintiff submitted a copy of the policy and his medical reports. In his initial report of August 6, 1988, Dr. Ferrell, one of plaintiff's treating physicians, noted that the plaintiff suffered a mid-foot near amputation of the left foot in the accident. In a letter dated October 12, 1989, Dr. Ferrell stated: "Mr. Jefferson did sustain traumatic amputation of the mid foot area back to the tibial talar joint which is at the ankle joint. As far as the spirit of the claim, I would say Mr. Jefferson [should] be treated as if this foot was completely avulsed and be treated as a long belowknee amputation rather than a partial foot *1187 amputation." In an October, 1988, report, Dr. Eric Bicknell stated that as a result of the accident, the plaintiff had sustained a "traumatic amputation of the mid and forefoot on the left." He also noted that a Chopart amputation had been surgically performed on plaintiff's left foot.
In support of its motion for summary judgment, the insurance company attached as exhibits the affidavit and reports of Dr. Dale C. Fazio. In his report, Dr. Fazio stated: "This level of amputation is distal, or below the level of the ankle joint. The talus and the calcaneous [sic] were not amputated and are considered part of the rear foot." In the operative report, Dr. James L. Etheredge stated that the amputation was "at the talonavicular and calcanocuboid level...." The insurance company also submitted copies of the claim forms submitted by the plaintiff and his doctor.
On April 9, 1990, the trial court rendered written reasons for judgment. The court stated that the "amputation was at the talonavicular and calcanealcuboid level, involving a surgical procedure called a `Chopart Amputation.'" The court noted that the amputation of plaintiff's foot "clearly was not ABOVE the ankle joint." Therefore, the question was whether the amputation was at the ankle joint. The court then referred to the Webster's Dictionary which defined "at" as "... a function word to indicate presence or occurrence in, on or near...." Since the trial court found that the plaintiff's loss was "certainly NEAR the ankle joint," it rendered judgment in plaintiff's favor. Plaintiff was awarded $25,000, with legal interest thereon from July 6, 1988, until paid, and all costs of the proceedings. However, the trial court denied penalties and attorney fees.
The insurance company appealed. It assigned as error the following: (1) the trial court erred in finding that the insurance policy covered the plaintiff's injury; and (2) the trial court erred in awarding legal interest from July 6, 1988. However, our finding that summary judgment is inappropriate in this case pretermits a definitive resolution of the first assignment and any consideration of the second assignment.

LAW
The defendant contends that the trial court erred in construing the insurance policy to provide coverage for the plaintiff's injury. It argues that the trial court's interpretation resulted in an enlargement of the insurance contract beyond what was reasonably contemplated by its terms.
An insurance policy is a contract between the parties and the rules established for the construction of written agreements also apply to contracts of insurance. The intention of the parties is of paramount importance in interpreting insurance contracts. Their intention is to be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. An insurance contract should not be given an interpretation which would act to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Courts do not have authority to change or alter the terms of an insurance policy under the guise of interpretation when such terms are couched in clear and unambiguous language. It is well-settled that ambiguous clauses in policies of insurance are to be construed against the insurer and in favor of the insured. In order to be ambiguous an insurance contract must not be only susceptible of two or more interpretations but both interpretations must be equally reasonable. Caraway v. Royale Airlines, Inc., 559 So.2d 954 (La.App. 2nd Cir.1990).
In Muse v. Metropolitan Life Insurance Company, 191 So. 586 (La.App. 2d Cir.1939), affirmed 193 La. 605, 192 So. 72 (1939), the plaintiff suffered a crushing hand injury which caused the complete severance of two fingers from the hand. The remaining three fingers were almost severed but were sewn back on the hand, which was thereafter useless. The plaintiff sought recovery under the provisions of a dismemberment insurance policy which allowed compensation for "[l]oss of one *1188 hand by severance at or above wrist-joint." The trial court granted the defendant's exception of no cause of action and dismissed the plaintiff's suit. Both the Second Circuit Court of Appeal and the Louisiana Supreme Court affirmed. The Supreme Court found that the policy contained no ambiguities. In so concluding, the court examined the jurisprudence of other jurisdictions addressing the same issue. The court found that "the overwhelming weight of authority is to the effect that, where an insurance policy provides indemnity for the `loss of a hand' or the `loss of a foot', or the `loss of an arm', and provides in the policy a definition or a specific statement as to what shall constitute a loss of such member, effect must be given to this qualifying definition or explanation."
This general rule of law is still valid. See Matthews v. Standard Life Insurance Company, 213 So.2d 128 (La.App.3d Cir. 1968). See also Annotation, Accident Insurance: What Is "Loss" of Body Member, 51 A.L.R. 4th 156, at 180-202 (1987); 44 Am.Jur.2d Insurance §§ 1469-1470, at 423-427 (1982); 1C Appleman, Insurance Law and Practice, §§ 702, 702.45 (1981).
In Mady v. Switchmen's Union of North America, 116 Minn. 147, 133 N.W. 472 (1911), the definition of total and permanent disability in the plaintiff's contract of insurance included "suffering by means of a physical separation of the loss of four fingers of one hand, at or above the third joint...." The plaintiff suffered a hand injury which necessitated the amputation of three fingers above the third joint and which damaged the bone of a fourth finger, requiring the removal of part of the bone and rendering that finger 50 percent useless. The court denied recovery, finding that while the provision, "as an example of English", might be criticized, its meaning was not ambiguous. The policy specified that the loss had to be by physical separation and made the extent of the loss definite by locating the point of separation at or above the third joint.[1]
In Adair v. General American Life Insurance Company, 124 S.W.2d 657 (Mo. App.1939), the plaintiff's foot was severed so as to leave only the calcaneum (or calcaneus), astragalus (or talus), and scaphoid (or navicular) bones. Of the 26 bones in the foot, only these three remained. The defendant's policy provided for recovery of the loss of feet (or foot), which is defined as "loss by severance at or above the ... ankle joints (or joint)." The court held that the policy language fixed "a definite and exact point of severance, to-wit: so near the point of articulation between the ankle and the foot as to cause the severance to destroy the effectiveness of the joint as a joint." The evidence demonstrated that the ankle joint was not dismembered and consequently the plaintiff was not entitled to recover. The court rejected the argument that "at" meant "near."
The policy issued in the present case defines the loss of a foot as the "physical separation at or above the ankle joint." As in Mady, supra, this language plainly requires that there be an actual division of a portion of the foot. Furthermore, as in Adair, supra, the language sets forth a definite location at which such separation is required, i.e., at or above the ankle joint. Additionally, in seeking to establish the exact location of the separation, plaintiff's counsel suggested at oral argument that the incision for a Chopart amputation may begin at a location on the lower leg which is higher than, or above, the ankle joint. As a consequence, it was suggested that the policy provision requiring "physical separation" may be ambiguous.
Summary judgment may be rendered only where the pleadings and affidavits on file demonstrate a lack of a genuine issue of material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966. Even in cases where the existence of a genuine issue of material fact is not strongly established, doubts are resolved against the granting of summary judgment. Summary judgment is not a substitute for trial on the merits. Litigants *1189 are not to be denied their day in court on the basis of documents and affidavits which make it appear unlikely that one party can prevail. Once the court detects the existence of a disputed issue of material fact, summary judgment may not be rendered. Ferina v. Howard, 285 So.2d 805 (La.App. 3d Cir.1973). Further, the weighing of conflicting evidence on material facts has no place in a summary procedure. Simon v. Fasig-Tipton Company of New York, 524 So.2d 788 (La.App. 3d Cir.1988), writs denied 525 So.2d 1048, 1049 (La.1988).
Our examination of the record reveals conflicting evidence on a material fact. As previously noted, the defendant's position that the plaintiff's loss was below the ankle joint was demonstrated by Dr. Fazio's report, as well as by the operative report of Dr. Etheredge. Dr. Fazio stated in his letter that the amputation was at "the talo-navicular and calcaneal-cuboid level." He described this level as being below the level of the ankle joint. In the operative report, Dr. Etheredge stated that the amputation was "at the talonavicular and calcanocuboid level." This is also below the ankle joint. However, in contradiction to these reports, Dr. Ferrell's letter stated that the plaintiff had sustained a "traumatic amputation of the mid foot area back to the tibial talar joint which is at the ankle joint." More specifically, "the tibial talar joint" appears to be part of the ankle joint itself. Furthermore, as previously noted, the plaintiff contended at oral argument that the highest point of the surgical incision made on his limb may place the actual "physical separation" above the ankle joint. The record is devoid of medical evidence addressing this issue.
Therefore, in light of the conflicting medical statements as to the point at which the amputation actually occurred, we find a serious issue of material fact is presented for resolution at trial. The exact location of the physical separation in relation to the ankle joint is crucial to the proper resolution of this case. Consequently, we reverse the judgment of the trial court and remand this case to the trial court for full consideration of the facts and the applicable law.

CONCLUSION
The judgment of the trial court is reversed, and the matter is remanded for further proceedings in keeping with this opinion. Costs are assessed equally to the parties.
REVERSED AND REMANDED.
BROWN, J., concurs and assigns reasons.
BROWN, Judge, concurring.
I concur that as presented a material issue of fact remains to be decided and summary judgment is not proper. I emphasize that defendant drafted the insurance contract and any ambiguity must be interpreted against the drafter. The physical nature of the foot may cause some confusion with the wording "at or above" in the contract.
The exhibit diagraming the foot used by defendant is misleading as it applies to the circumstances of this surgery. The ankle joint slants horizontally downward while the amputation in this case was vertical with the initial incision at the highest point of the foot. As stated by the majority, the trial court must consider the evidence on whether this was above the ankle joint and resolve any reasonable ambiguity in favor of plaintiff.
NOTES
[1] However, see and compare Beber v. Brotherhood of Railroad Trainmen, 75 Neb. 183, 106 N.W. 168 (1905), with which this court disagreed in Muse, 191 So. at 589.