FULLER *v.* LOCOMOTIVE ENGINEERS' MUTUAL LIFE &
ACCIDENT INSURANCE ASSOCIATION.

MUTUAL BENEFIT ASSOCIATIONS—ACCIDENT INDEMNITY—AMPUTA-
TIONS—LOSS OF FOOT.
A by-law of a mutual benefit association, providing that any
member receiving bodily injuries which alone shall "cause
amputation of a limb (whole hand or foot)" shall be entitled
to certain benefits, does not cover the case of an amputation
of only a part of a foot, though the foot is rendered useless
for the performance of its natural functions.

Error to St. Clair; Vance, J. Submitted November
15, 1899. Decided December 30, 1899.

*Assumpsit* by William L. Fuller against the Locomo-
tive Engineers' Mutual Life & Accident Insurance Asso-
ciation on a policy of insurance. From a judgment for
defendant on verdict directed by the court, plaintiff brings
error. Affirmed.

*John B. McIlwain,* for appellant.

*Phillips & Jenks,* for appellee.

HOOKER, J. The plaintiff was a member of a mutual
benefit association, and held a certificate which he claims
to entitle him to payment of $3,000 under article 19 of the
by-laws, which is as follows:

"Any member, while engaged in any lawful avocation,
receiving bodily injuries which alone shall cause amputa-
tion of a limb (whole hand or foot), or total and perma-
nent loss of eyesight, he shall receive the full amount of
his policy."

The defendant refuses payment upon the ground that
the injury sustained does not bring him within the by-law,
for the reason that the injury did not cause amputation of

a whole hand or foot.    The circuit judge directed a verdict for the defendant, and the plaintiff has appealed.

The record contains diagrams showing the size and shape of the whole left foot and the maimed right foot. They were made by drawing a pencil around them while the plaintiff stood upon a piece of paper.    The length of the whole foot is 11 5-16 inches to the end of the great toe, while the amputated foot is exactly $7\frac{1}{2}$ inches on a line drawn through the center of the foot, and $7\frac{3}{4}$ inches if drawn in the direction of the great toe.    It is thus demonstrated that the foot is shortened 3 13-16 inches, which is as nearly one-third as it well could be.    This one-third is from the toe, and it leaves two-thirds of the foot. This would leave all of the heel, and substantially all of the hollow of the foot, and possibly a part of what is called the "ball" of the foot.    We do not overlook the statement that the skin of the sole was left longer to lap upward over the end, and perhaps part of the top, of the mutilated foot, but this cannot have lengthened it materially.    It is claimed that it would be 1 inch.    Counsel claims that the proof shows that all use of the foot is lost, and insists that this brings him within the spirit and meaning of the contract.    He contends: *First*, that the contract should be read as though it said, "Foot or whole hand,"—in other words, that the qualifying adjective, "whole," should not be applied to "foot;" and, *second*, that, in any event, the whole foot was amputated when it was so far removed as to be useless in the performance of the natural functions of a foot.

The natural construction of the words would be the same as though the by-law had said, "Whole hand or whole foot."    Furthermore, the injury insured against is not the amputation of a hand or foot, but a limb; and the words in brackets, "whole hand or foot," are used as explanatory of what was meant by the word "limb," *i. e.,* an amputation, not necessarily a whole arm or leg, at the elbow or knee, but any amputation of a limb that should include a whole hand or a whole foot.

We are cited upon the second proposition to some
authorities which are said to hold that, if the beneficial
use of a member is lost, there may be a recovery. That
would be a reasonable construction of a contract of insur-
ance that should insure against the "loss of a hand or
foot," for it might well be said that a foot or hand is lost
when it is so impaired as to be of no further use; and that
is as far as the authorities have gone. What is meant by
the loss of a hand? Ordinarily the term "loss" is obvious,
but when it is considered in the light of surrounding cir-
cumstances, viz., an insurance policy that indemnifies
against the loss of a hand or an entire hand, it is not un-
reasonable to hold that the parties understood that any
injury to the hand which rendered it useless was a loss of
the hand or entire hand. In *Sheanon* v. *Insurance Co.*,
77 Wis. 618 (9 L. R. A. 685, 20 Am. St. Rep. 151), where
"an insurance policy provided that the principal sum
should be paid if the insured, from a violent and acci-
dental injury which should be externally visible, should
'suffer the loss of the entire sight of both eyes, or the loss
of two entire hands or two entire feet, or one entire hand
and one entire foot,' the insured was accidentally shot in
the back; the bullet penetrating his spine, and producing
immediate and total paralysis of the lower part of his
body, and entirely destroying the use of both feet. Held,
that he had suffered 'the loss of two entire feet,' within
the meaning of the policy."

The court said:

"The question is, Does the policy cover such an injury?
The policy covers both death and indemnity; the company
agreeing to pay the principal sum if the insured, from
a violent and accidental injury which should be externally
visible, should 'suffer the loss of the entire sight of both
eyes, or the loss of two entire hands or two entire feet,
or one entire hand and one entire foot.' This is the lan-
guage of the policy, and the question is, What does it
mean, or what must be understood by it? Is its meaning
that the insured is not entitled to recover the insurance
money unless his legs and feet have been amputated or
severed from his body, or does it mean that the injury

must have destroyed the entire use of his legs and feet, so that they will perform no function whatever? The contention of the learned counsel for the defendant is that the clause is to be understood in the former sense, and implies an amputation or physical severance of the feet from the body, and does not include an injury such as paralysis, though such injury actually deprives the insured of all use of his feet and legs. We cannot adopt such a construction of the contract. To our minds, the loss of the hands and feet embraced in the policy is an actual and entire loss of their use as members of the body; and if their use is actually destroyed, so that they will perform no function whatever, then they are lost as hands and feet. In ordinary and popular parlance, when a person is deprived of the use of a limb we say he has lost it. This is the ordinary sense attached to the word when used in such a connection. Now, if the feet and hands cannot be used for the purpose of moving about or walking, or for holding and handling things, they are in fact lost as much as though actually severed from the body. The expression 'loss of feet' would generally be understood to mean a loss of the use of these members; and if the lower portions of the plaintiff's body and his feet are completely paralyzed, and he is permanently and forever deprived of their use, he has suffered 'a loss of two entire feet,' within the meaning of the policy."

The next case in chronological order to which our attention is called is *Stevers* v. *Insurance Ass'n*, 150 Pa. St. 132 (16 L. R. A. 446). There it was held that:

"An accident policy insuring against involuntary, external, violent, and accidental injuries, and not against disease of any kind, or against disabilities which are the result, wholly or in part, of disease or bodily infirmities, and providing for a stipulated indemnity for partial permanent disablement, which is defined to be the loss of one hand or foot or both eyes, does not cover the case of indemnity for an injury where the foot is not lost or injured, and it may be used constantly by means of an appliance of a plaster jacket to the spine, although the foot could not be used if the appliance were removed."

It was held that he had lost neither the foot nor the use of it.

The case of *Sneck* v. *Insurance Co.* is next in order of

time. This case was tried twice, and is reported in 81 Hun, 331, and 88 Hun, 94. The undertaking in that case was based upon "a loss by severance of one entire hand or foot." At the first review the court held that it was error to submit the case to the jury where the proof showed that the hand was removed a short distance back of the knuckle. Bradley, J., dissented; urging that the policy insured against *loss* of the hand, and that, it being shown that the *entire use* of the hand *was lost*, there might be a recovery. Upon the second hearing this view was taken; Werner and Ward, JJ., sustaining it; Lewis, J., dissenting; and Bradley, J., not voting; and this order was afterwards affirmed by the court of appeals in 156 N. Y. 669.

Again, in *Lord* v. *Accident Ass'n*, 89 Wis. 19 (26 L. R. A. 741, 46 Am. St. Rep. 815), it was held that "it is for the jury to determine whether a total loss of three fingers and a part of another on the same hand, destruction of the joint of the thumb, and a cutting of the hand, is a loss of the hand, 'causing immediate, continuous, and total disability,' within the meaning of that clause in a policy of accident insurance."

A number of cases are collected in a note to *Turner* v. *Casualty Co.*, 38 L. R. A. 535, 536 (112 Mich. 425).

In 1 Am. & Eng. Enc. Law (2d Ed.), 301, this subject is summed up as follows:

"It has been contended on behalf of the insurance companies that the provisions in regard to the 'loss' of the hands and feet must be understood to imply an actual amputation or physical severance of those members from the body. But this view has not met with favor from the courts; it being held that, to entitle the insured to recover, physical severance is unnecessary, but it is sufficient if he has been deprived entirely of the use of the feet and hands as members of the body. And there can scarcely be any doubt as to the soundness of this view, for if the feet and hands cannot be used for the purpose of moving about or walking, or for holding and handling things, they are in fact lost as much as though actually severed from the body. Many of the companies have altered their policies

so as to read, 'The loss of feet or hands by severance' thereof; but this provision has been held to be intended to refer to the manner, rather than to the exact physical extent, of the injury."

These cases establish the proposition that where an insurance policy insures against the loss of a member, or the loss of an entire member, the word "loss" should be construed to mean the destruction of the usefulness of the member, or the entire member, for the purposes to which, in its normal condition, it was susceptible of application. In all of these policies the word "loss" is used, and it is the loss of the member that is in terms insured against. As indicated in the last authority cited, the attempts of the insurance companies to avoid this construction by so changing the policy that it reads, "Loss by severance of feet or hands," have failed; the courts holding, as before, that it is the loss of the use of the member which was the object of the contract. In the present case the word "loss" is eliminated, and the insurance is against "an *injury* that shall cause the amputation of a limb (whole hand or foot), or total and permanent loss of eyesight." This language is not ambiguous, and, if the insurance company intended to limit its liability to cases where the entire member was actually amputated, it could not well have chosen more apt and certain language to indicate it, without supplementing it with a negative statement that should exclude recovery for the amputation of less than the entire foot or hand; and it is doubtful if that would not be open to the same construction as the language actually used. This company is composed of the insured. They make contracts of insurance which protect against certain injuries merely. It is not for us to make contracts for them, nor should we enlarge their liabilities. We may determine the intention of the contracting parties as disclosed by the contract, if it is ambiguous, or in the light of the circumstances under which it was made, if it is fairly susceptible of a different meaning from that natur-

ally implied by the unexplained use of the words.    This is neither.

The instruction of the learned circuit judge was correct, and the judgment is affirmed.

The other Justices concurred.