Argued February 1, affirmed February 16, 1915.

## MOORE v. ÆTNA LIFE INS. CO.

(146 Pac. 151.)

**Insurance—Accident Insurance—"Loss of Hand."**

1. An accident policy, which binds insurer to pay a specified sum
on insured suffering accidental injuries resulting in the "loss of a
hand" by removal at or above the wrist, makes insurer liable where
insured was accidentally shot in the hand, necessitating amputation
of the hand, except a part apparently worthless; the amputation
beginning at the wrist.

> [As to construction of provision in accident insurance contract
> with respect to "visible injury" or similar term, see note in
> Ann. Cas. 1915A, 537.]

Insurance—Contracts—Consideration.

2. A policy reasonably susceptible of two interpretations will be construed most favorably for insured.

From Multnomah: THOMAS J. CLEETON, Judge.

This is an action by George C. Moore against the Aetna Life Insurance Company. From a judgment in favor of plaintiff, defendant appeals. The facts are stated in the opinion of the court.    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Snow & McCamant* and *Mr. MacCormac Snow,* with an oral argument by *Mr. Wallace McCamant.*

For respondent there was a brief with oral arguments by *Mr. Charles A. Hart* and *Mr. C. E. McCulloch.*

Department 1.    MR. JUSTICE McBRIDE delivered the opinion of the court.

This is an action to recover upon an accident insurance policy. That portion thereof which is material to this case stipulates that the plaintiff shall be entitled to recover $1,000 if he should suffer accidental injuries resulting in the "loss of a hand by removal at or above the wrist." The plaintiff was accidentally shot in the hand, necessitating the removal of all the bones of the hand at the wrist except the metacarpal bone of the thumb. From the medical testimony, which is meager, and photographs taken about the time of the trial, it appears that the amputation began at the inner side of the left wrist, removing probably a small portion of the unciform bone, and including in the operation all the metacarpal bones of the four fingers at their articulation with the unciform, os mag-

num, and trapezoid, respectively. The os magnum trapezoid and trapsium are clearly left intact, and the bones of the thumb, while possibly injured by the shot, retain their continuity. The thumb itself was not removed, although the ball of that member was partially destroyed and the ligaments so injured that it is stiff and entirely useless. The medical witness stated that in his opinion it would have been better to have removed what remained of the thumb, so that plaintiff could have had an artificial hand. There was enough of the flesh on the hand to cover the bones of the wrist forming what the medical witness termed ''a bunch of hardened callous'' at the end of the wrist, probably no more than good surgery would require for the protection of the bones of the wrist. The cause was tried without the intervention of a jury, and the court found that the plaintiff had suffered the loss of his hand at the wrist, and rendered judgment in his favor, from which defendant appeals.

1. Defendant's contention is that the loss of a hand by removal at or above the wrist means that the entire hand must be physically separated from the body at or above the wrist; and the logical sequence of this argument is that if any fragment useful or useless is not so removed, the plaintiff has not brought himself within the terms of his policy and cannot recover. The question is one of extreme nicety, and there is a dearth of decisions covering the exact point here involved; there being no case cited by counsel or discovered by us involving the construction of a policy exactly identical in its terms with the one upon which this action is predicated. Thus in *Sheanon* v. *Pacific Mutual Life Ins. Co.,* 77 Wis. 618 (46 N. W. 799, 20 Am. St. Rep. 151, 9 L. R. A. 685), where a policy was issued against

the loss of a hand or foot, it was held that the insured, who was shot in the back, the injury completely paralyzing the lower limbs so that both his feet were rendered useless, could recover although there was no physical severance of either foot; the court holding that the phrases covering the loss of a foot should be construed to include the loss of the use of it. There are a number of decisions to the same effect, but in none of these do the words ''by removal,'' which are used in the policy here considered, appear.

We will now consider the cases cited by counsel for defendant where the words ''by removal,'' or their equivalent ''by severance,'' are contained in the policy. The first of these is *Fuller* v. *Locomotive Engineers' etc. Assn.*, 122 Mich. 548 (81 N. W. 326, 80 Am. St. Rep. 598, 48 L. R. A. 86), where the policy was issued against ''injuries which alone shall cause the amputation of a limb (whole hand or foot).'' The plaintiff in that case suffered an injury which resulted in an amputation of about one third of the foot, leaving all of the heel, substantially all of the hollow of the foot, and possibly part of the ball of the foot; the policy having been conditioned upon the amputation of ''the whole of the foot.'' The court held that he could not recover even though he claimed in his testimony that the remaining portion of the foot was useless. The opinion contains an interesting *résumé* of the cases bearing upon this subject, and distinguishes between the case then in hand and *Sneck* v. *Travelers' Ins. Co.*, 88 Hun, 94 (34 N. Y. Supp. 545), hereafter to be noticed. Another of the cases is *Chevaliers* v. *Shearer*, 27 Ohio Civ. Ct. R. 509, in which the plaintiff was insured against loss of the hand by amputation. He received an injury whereby he lost the complete use of his hand; but no part of it was amputated, and it was

held that the injury was not within the terms of the policy. In *Mady* v. *Switchmen's Union, etc.,* 116 Minn. 147 (133 N. W. 472), the plaintiff was insured against injury occasioned by physical separation of four fingers at or above the third joint. The proof showed that he had lost three fingers by amputation at the third joint, and that the fourth finger was injured so as to impair its usefulness 50 per cent. It was held that this injury was not within the terms of the policy. In *Stoner* v. *Yeomen,* 160 Ill. App. 432, plaintiff was insured against injury by loss of a hand at or above the wrist. The evidence showed that he had at least half of the hand left. The court held he could not recover, saying:

"He [plaintiff] testified he could use the hand to drive nails, but that he did not have much strength in it; that he had worked at the carpenter's trade earning $2 a day since the injury. It is clear that plaintiff's hand was badly injured, but he has the use of more than half the hand, so that he has not lost a hand at or above the wrist."

How different from the case at bar, where substantially nothing remains of plaintiff's hand but a worse than useless fragment!

Another case is *Brotherhood of Railroad Trainmen* v. *Walsh* (Ohio), 103 N. E. 759, where plaintiff in the court below was insured against suffering the "amputation of the entire hand at or above the wrist." One finger was amputated, leaving the rest of the hand, as he claimed, useless. It was held that he could not recover. In this case, like the case of *Fuller* v. *Locomotive Engineers' etc. Assn.,* 122 Mich. 548 (81 N. W. 326, 80 Am. St. Rep. 598, 48 L. R. A. 86), the court distinguishes the case in hand from *Sneck* v. *Travelers'*

*Ins. Co.,* 88 Hun, 94 (34 N. Y. Supp. 545), much relied
on by respondent here, saying:

"The Circuit Court, in its opinion, refers to the case
of *Sneck* v. *Travelers' Ins. Co.,* 88 Hun, 94, 34 N. Y.
Supp. 545, and holds that the law announced there is
applicable. In that case, the policy of insurance pro-
vided against loss, by severance, of one entire hand.
The insured lost only a portion of his hand; but it ap-
peared that the part remaining was useless, and it
was held that plaintiff had lost his 'entire hand,'
within the meaning of the policy providing for such
loss. In the regulation under consideration here, the
word 'loss' is eliminated, and the association limited
its liability to cases where an entire hand is actually
amputated or severed. If, under the regulation in
question, defendant in error is entitled to recover for
the loss of the use of his entire hand, which has been
severed in part only, then the words 'at or above the
wrist joint' would serve no purpose."

The foregoing are the leading cases cited to sup-
port defendant's contention. They may be divided
into three classes: (a) Where no part of the hand or
foot has been severed, but where it has become useless
by reason of an injury to some other part of the body,
as in the case of the man who was paralyzed by being
shot in the back; (b) where some portion of the in-
jured member has been severed, but some useful por-
tion still remains, as in the case of *Mady* v. *Switch-
men's Union, etc.,* 116 Minn. 147 (133 N. W. 472), or
the case of *Stoner* v. *Yoemen,* 160 Ill. App. 432, where
there was a partial amputation, but enough of the in-
jured member left to enable the injured person to use
it imperfectly in his ordinary business; or (c) where
there was an injury requiring the amputation of a
comparatively small part of the injured member, the
larger portion remaining but practically useless. In
our opinion the case at bar does not come within any

of these classifications, either in letter or spirit, and the plaintiff must be held to be within the true meaning and spirit of the policy.

2. It is a thoroughly settled rule in the construction of a policy of insurance, which is reasonably susceptible of two interpretations, that that meaning will be given to it which is more favorable to the insured: *Hoffman* v. *Aetna Ins. Co.,* 32 N. Y. 413 (88 Am. Dec. 337); *Darrow* v. *Family Fund Society,* 116 N. Y. 537 (22 N. E. 1093, 15 Am. St. Rep. 430, 6 L. R. A. 495); *American Surety Co.* v. *Pauly,* 170 U. S. 133 (42 L. Ed. 977, 18 Sup. Ct. Rep. 552); *Sneck* v. *Travelers' Ins. Co.,* 88 Hun, 94 (34 N. Y. Supp. 545). This is but giving effect to the maxim of Lord Bacon quoted in the case of *Hoffman* v. *Aetna Ins. Co.,* 32 N. Y. 413 (88 Am. Dec. 337), namely:

"All words, * * whether they be in deeds, or statutes, or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and the person."

And it is also observed in the same opinion:

"It is a rule of law, as well as of ethics, that where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee. * * It is also a familiar rule of law that, if it be left in doubt, in view of the general tenor of the instrument and the relations of the contracting parties, whether the given words were used in an enlarged or a restricted sense, other things being equal, that construction should be adopted which is most beneficial to the promisee."

Now, in view of these salutary maxims of the jurists, let us consider the relations of the parties and the object which plaintiff had in view when he took out this policy. He had a good hand against losing the

use of which he desired to insure. If he had been told the intent and meaning of the policy was such that if in case of a necessary amputation the surgeon should leave some useless shred of his hand to be a sources of annoyance and inconvenience, and thereby his policy would be practically worthless, does any sane person believe for a moment he would have taken out the policy? The substance of what he sought was insurance against the possible loss of his hand as a useful member of his body. Substantially he has lost his hand by removal at the wrist. In view of all the decisions, it is apparent that the words "by removal at or above the wrist" were introduced as a safeguard against possible fraud and to prevent a recovery in cases where there had been no substantial removal of the injured member; but here the hand, as a hand, is gone. Practically the plaintiff has no hand. What occasioned this practical loss of his hand? The answer must be the gunshot wound, and the consequent removal at the wrist of all that made the member useful. An insurer should not be allowed by the use of obscure phrases and exceptions to defeat the very purpose for which the policy was procured. This rule finds support in *Sneck* v. *Travelers' Ins. Co.*, 88 Hun, 94 (34 N. Y. Supp. 545), which is in many respects similar to the case at bar. The plaintiff was insured against "loss by severance of one entire hand." It appeared from the testimony that 13 of the 27 bones of the hand were gone; that nearly one half of the hand, anatomically speaking, remained, but was useless. The court held that he was entitled to recover, and used this language:

"To require the insured to submit to a strictly literal interpretation of the contract prepared for him by the insurer, without regard to the purpose of the

contract or the understanding thereof by the parties, would be to hold that only in case of the severance of the entire hand in a most accurately anatomical or technical sense could the insured recover under this clause of the policy. We do not believe that such a conclusion is required in the present case. The term 'entire hand' is to be taken in its general acceptation and ordinary meaning. In construing this contract the law does not require an injury which comes within a strictly accurate and technical definition of the words employed, but one which reasonably, fairly and practically comes within the meaning of the terms employed in their general and usual meaning and acceptation. In a contract of insurance providing for indemnity for the loss of a limb, the compensation to be paid is not merely for the physical pain of its amputation, but principally for the deprivation of its use as a member of the body. It would seem to be an extremely narrow and technical construction of this contract to say that only a physical removal of every particle of that portion of the human anatomy known as the hand would entitle the insured to recover under the clause of the policy now under consideration. Is it not more reasonable and logical to conclude that, in the use of the language above referred to, the 'entire hand' as a part of the human structure is considered in connection with the use to which it is adapted, and the injury which the loss of such use would entail? Is it not also fair to assume that this was regarded by the parties as the sense in which the contract was to be understood, and was one of the considerations, which influenced the insured to enter into the contract.''

This case was afterward affirmed by the court of appeals in a memorandum opinion which does not further discuss the legal points involved. A further case having some features in common with the case at bar is *Garcelon* v. *Commercial Travelers' etc. Assn.*, 184 Mass. 8 (67 N. E. 868, 100 Am. St. Rep. 540). Plaintiff was insured against the loss of an arm and suf-

fered an accident necessitating the amputation of his arm below the elbow. There, as here, the defendant contended that the loss of a portion of an arm was not the "loss of an arm" within the meaning of the policy; but the court overruled its contention. In *Fuller* v. *Locomotive Engineers' etc. Assn.*, 122 Mich. 548, (81 N. W. 326, 48 L. R. A. 86, 80 Am. St. Rep. 598), the court, after citing authorities, remarks:

"These cases establish the proposition that where an insurance policy insures against the loss of a member, or a loss of an entire member, the word 'loss' should be construed to mean the destruction of the usefulness of the member, or the entire member, for the purposes to which, in its normal condition, it was susceptible of application. In all of these policies the word 'loss' is used, and it is the loss of the member that is in terms insured against. As indicated in the last authority cited, the attempts of the insurance companies to avoid this construction by so changing the policy that it reads, 'loss by severance of feet or hands,' has failed; the courts holding, as before, that it is the loss of the use of the member which was the object of the contract."

1 Am. & Eng. Ency. Law (2 ed.), page 301, sums up the authorities as follows:

"It has been contended on behalf of the insurance companies that the provisions in regard to the 'loss' of the hands and feet must be understood to imply an actual amputation or physical severance of these members from the body. But this view has not met with favor from the courts; it being held that, to entitle the insured to recover, physical severance is unnecessary, but it is sufficient if he has been deprived entirely of the use of his feet and hands as members of the body. And there can scarcely be any doubt as to the soundness of this view, for if the feet and hands cannot be used for the purpose of moving about or walking, or for holding and handling things, they are in fact lost

as much as though actually severed from the body. Many of the companies have altered their policies so as to read, 'the loss of feet or hands by severance' thereof; but this provision has been held to be intended to refer to the manner rather than to the exact physical extent of the injury.''

We do not cite these excerpts as being precisely in point in the present case, but rather to indicate the tendency of the courts to adhere to the spirit rather than the strict letter of these contracts; and, construing this policy in accordance with its spirit and substance, we hold that the plaintiff has suffered the loss of his hand by removal at the wrist, and therefore affirm the judgment.                         AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.