[Civ. No. 11944. Third Dist. Aug. 12, 1969.]

JOHN CARL CRAWFORD, Plaintiff and Appellant, v. LLOYDS LONDON et al., Defendants and Respondents.

Pease, Mayhew & Kassis, Pease & Kassis and James E. Kassis for Plaintiff and Appellant.

Fitzwilliam, Memering, Stumbos & DeMers and T. D. Bolling, Jr., for Defendants and Respondents.

REGAN, J.—This is an action for breach of a liability insurance contract. The trial court sustained the defendants' general demurrer to the complaint without leave to amend and plaintiff appeals from the subsequent judgment, contending:

The trial court erred in sustaining defendants' demurrer to the complaint on the grounds that the complaint did not state facts sufficient to constitute a cause of action since the language of the policy covers the injury to, and subsequent amputation of a portion of, plaintiff's hand.

On October 22, 1965, plaintiff, while in the course of his employment[1] in Tulare County, suffered a crushing and mangling injury to his left hand that required emergency surgical care and treatment. The surgery resulted in the amputation of all of his left thumb at the wrist joint, all of his index finger, including a portion of the long or metacarpal bone in his hand, all of his middle finger and two and one-half bones of his ring finger, and two bones of his little finger. As a result of the amputation, plaintiff lost or had removed some 15 of the 27 bones in his left hand. The portion of the left hand remaining is useless and impairs his ability to utilize a prosthetic device.

At the time of the accident, plaintiff was covered by a "Lloyd's Accident Policy." Following the injury to plaintiff's hand, the defendant insurer, pursuant to the policy, paid total temporary disability payments for the period beginning on the date of injury to July 25, 1966, for a total of $7,800. However, the defendants refused to pay plaintiff the sum of $40,000 under the "Loss of A Limb" coverage and plaintiff seeks recovery under that benefit provision, alleging a breach of contract.

The insuring agreement provides as follows:

"WE THE UNDERWRITERS hereby agree with the Assured,

---

[1]Plaintiff was employed as a "toolpusher," i.e., a foreman who supervises drilling operations at an oil well or group of oil wells.

to the extent and in the manner hereinafter provided, that if anywhere in the World at any time during the period of this Policy he shall sustain any bodily injury caused by an accident, which shall solely and independently of any other cause within twelve calendar months from the date of the accident causing such injury occasion his death or disablement as hereinafter defined, we will pay to the Assured, or to the Assured's Executors or Administrators, according to the Schedule of Benefits overleaf within Seven Days after the · total claim shall be substantiated under this Policy . . . ."

Under the "SCHEDULE OF BENEFITS," the following is included:

"3. Total loss of one limb or total
loss of sight of one eye. $40,000"

On the first page of the policy, under the heading "DEFINITIONS," "loss of a limb" is defined as meaning "loss by physical separation of a hand at or above the wrist or of a foot at or above the ankle."

Plaintiff, in his complaint, also alleges:

"That at the time of renewing said policy, plaintiff had a good left hand and he desired to insure against the loss of the use of that left hand. That he was not advised by defendants, or any of them, nor did he know or understand to be that the said insurers now claimed intent and meaning of the said policy coverage was such that, if in the course of a necessary amputation of his left hand, the surgeon should leave some useless portion of his hand to be a source of annoyance and inconvenience to him and that thereby his policy would be practically worthless; that instead of such meaning or intent, he sought and intended, at said time or renewal, to insure against the possible loss of his hand as a useful member of his body."

Plaintiff's contention on appeal is that the injury and subsequent amputation of a portion of his left hand constitute "loss of a limb" within the meaning of the policy. Thus, defendants' refusal to pay the benefit of $40,000 under the loss of a limb coverage constitutes a breach of contract.

The rules governing the interpretation of insurance contracts are set forth in *New York Life Ins. Co.* v. *Hollender* (1951) 38 Cal.2d 73, 81 [237 P.2d 510] : "In construing life insurance policies as in the construction of other contracts, the entire contract is to be construed together for the purpose of giving force and effect to each clause. [Citations.]

■ While it is settled law that in case of doubt the provisions of the insurance contract will be construed most strongly against the insurer [citations], the rule is equally well established that where the terms of the policy are plain and explicit, the court will indulge in no forced construction so as to cast a liability upon the insurance company which it has not assumed [citations]. ■ In the interpretation of any written instrument, the primary object is to ascertain and carry out the intention of the parties. [Citations.]''

And in *O'Doan* v. *Insurance Co. of North America* (1966) 243 Cal.App.2d 71, 77 [52 Cal.Rptr. 184], this court stated: ''Pertinent rules of interpretation are simple enough. If the policy language is clear, the contract must be given effect as executed by the parties. [Citation.] If the language is ambiguous, any reasonable doubt will be resolved against the insurance carrier. [Citation.] The rule of construction against the insurer may not be invoked when the policy is clear. [Citations.] A policy provision is ambiguous only when, on its face, it is capable of two different constructions, both of which are reasonable. [Citations.] No term of a policy is ambiguous if its meaning can be ascertained by fair inference from the remaining terms. [Citations.]''.

■ We reverse the judgment of the trial court and in so doing hold that as plaintiff's injury resulted in amputation of all usable portions of his left hand commencing at the wrist joint he suffered a total loss of limb by physical separation of the limb at the wrist joint.

Analogous situations have arisen in other states. Plaintiff relies heavily on the case of *Moore* v. *Aetna Life Ins. Co.* (1915) 75 Ore. 47 [146 P. 151, 47 Ann.Cas. 1917B, 1005, 47 L.R.A. 1915D, 264]. In *Moore,* the policy provided for a benefit in the event of the '' 'loss of hand' by removal at or above the wrist . . . .'' There the insured lost all of the bones of the hand at the wrist except the metacarpal bone of the thumb. The defendant insurer contended that the phraseology meant that the entire hand must be physically separated from the body at or above the wrist. The court rejected this argument and held that plaintiff's injury did indeed fall within the policy provisions. After reciting well-known rules of construction of insurance policies the Oregon court in *Moore, supra,* stated (at p. 153) : ''Now, in view of these salutary maxims of the jurists, let us consider the relations of the parties and the object which plaintiff had in view when he took out this policy. He had a good hand against the losing the use of

which he desired to insure. If he had been told the intent and meaning of the policy was such that if in case of a necessary amputation the surgeon should leave some useless shred of his hand to be a source of annoyance and inconvenience, and thereby his policy would be practically worthless, does any sane person believe for a moment he would have taken out the policy? The substance of what he sought was insurance against the possible loss of his hand as a useful member of his body. Substantially he has lost his hand by removal at the wrist. In view of all the decisions, it is apparent that the words 'by removal at or above the wrist' were introduced as a safeguard against possible fraud and to prevent a recovery in cases where there had been no substantial removal of the injured member; but here the hand, as a hand, is gone. Practically the plaintiff has no hand. What occasioned this practical loss of his hand? The answer must be the gunshot wound, and the consequent removal at the wrist of all that made the member useful. An insurer should not be allowed by the use of obscure phrases and exceptions to defeat the very purpose for which the policy was procured.' "[2]

The court in *Moore* also distinguished cases from other jurisdictions and concluded (at p. 152) : "How different from the case at bar, where substantially nothing remains of plaintiff's hand but a worse than useless fragment!"

█ The phrase "at or above the wrist" is ambiguous and subject to judicial interpretation. In particular, the word "at" has an indefinite meaning; its primary sense is nearness or proximity. (See *Clark* v. *Sayle* (1950) 208 Miss. 559 [45 So.2d 138, 140] ; *Mahoney* v. *Nuttman* (1865) 27 Cal. 342, 345 ; see also definition in Webster's New Internat. Dict. (2d ed. 1959), p. 172.) Plaintiff contends that the point of severance is denoted only to prevent false and fraudulent claims, and that to require a precise and technical severance at a particular point would be a frustration of the intent and pur-

---

[2]Accord, *Sneck* v. *Travelers' Ins. Co.* (1895) 34 N.Y.S. 545, 548; see *Beber* v. *Brotherhood of R. R. Trainmen* (1905) 75 Neb. 183 [106 N.W. 168, 121 Am.St.Rep. 782] ; *Lord* v. *American Mut. Acc. Assn.* (1894) 89 Wis. 19 [61 N.W. 293, 46 Am.St.Rep. 815, 26 L.R.A. 741]; *Life & Cas. Ins. Co.* v. *Peacock* (1929) 220 Ala. 104 [124 So. 229] ; *Noel* v. *Continental Cas. Co.* (1933) 138 Kan. 136 [23 P.2d 610]; *Travelers' Protective Assn.* v. *Brazington* (1919) 71 Ind.App. 130 [123 N.E. 221]; cf. *Sheanon* v. *Pacific Mut. Life Ins. Co.* (1890) 77 Wis. 618 [46 N.W. 799, 20 Am.St.Rep. 151, 9 L.R.A. 685]; see also, 1A Appleman, Insurance Law and Practice, § 702, pp. 687-690 [wherein the author cites *Moore* with approval, stating (at p. 689) : ". . . Oregon held, very sensibly, that if there was only a small portion of the hand left which was completely useless, the policy requirement was satisfied."]

pose for which such a policy was purchased (i.e., to protect the insured against the possibility of the loss of use of one of his hands).

Defendants, on the other hand, maintain that there is no ambiguity in the contract of insurance and contends that the cases cited by plaintiff are distinguishable. Defendants first note that the cases cited by plaintiff involve policies that insure against loss of a hand or foot whereas defendants' policy insures against loss of a limb.[3] It then states that there is a category of cases that insure against loss of a hand or foot (or fingers) and define loss as meaning severance or separation of the insured member at a designated place, usually at or above the wrist or ankle. Defendants then contend that in the great majority of these cases the policies have been applied as written.[4] Defendants attempt to distinguish *Moore* (and other allied cases) since *Moore* involved a provision insuring against the loss of hand or foot, not a provision insuring against "loss of a limb." Defendants contend that the language of the policy which insures against the risk of "loss of a limb," plainly means that an insured who has lost a portion of one of his upper limbs, amounting to at least the hand and such portion of the wrist as to render the wrist useless as a joint, will be deemed to have lost an upper limb for the purpose of insurance coverage. It concludes that the subjective intent of the insured cannot overcome the plain language of the policy. (See *Fullerton* v. *Houston Fire & Cas. Ins. Co.* (1965) 234 Cal.App.2d 743, 747 [44 Cal.Rptr. 711].)

Although no precise California case on the point has been found, we note initially that in other states this type of insurance coverage has proved troublesome and has resulted in much litigation. The insurers have employed differing phraseology apparently in an attempt to restrict their liability to

---

[3]Note, however, that "loss of a limb" is defined in the policy as loss by physical separation of a hand at or above the wrist or a foot at or above the ankle."

· [4]Some of the cases appearing to support this view are: *Brotherhood of R.R. Trainmen* v. *Walsh* (1913) 89 Ohio St. 15 [103 N.E. 759]; *Brotherhood of R.R. Trainmen* v. *Wilkins* (1935) 257 Ky. 331 [78 S.W. 2d 6]; *Metzler* v. *American Cas. Co. of Reading, Pa.* (E.D. Ark. 1955) 137 F.Supp. 320; *Great Northern Life Ins. Co.* v. *Tulsa Cotton Oil Co.* (1938) 182 Okla. 107 [76 P.2d 913]; *Hardin* v. *Continental Cas. Co.* (1917 Tex. Civ.App.) 195 S.W. 653; *Muse* v. *Metropolitan Life Ins. Co.* (1939) 193 La. 605 [192 So. 72, 125 A.L.R. 1075].

Plaintiff, however, contends these cases are distinguishable since the policy provisions talked of either "complete severance" or severance at the "joint."

distinct factual happenings.[5] To attempt to reconcile the various phraseologies used, and the resultant judicial results, would involve us in a semantic jungle, which we do not care to explore. Rather, we think that there is an overriding factor here, and that is the intent of the insured to provide for financial security in the event of the loss of use of a hand or foot, thus precluding him from pursuing his livelihood.[6]

This court in *O'Doan* v. *Insurance Co. of North America, supra,* 243 Cal.App.2d at page 77, stated: "The initial objective, a decision whether the provision is clear or ambiguous, is frequently more elusive than the resolution of ambiguities." Nevertheless, in view of the intent behind this sort of coverage (see *Underwriters at Lloyd's of London* v. *Hunefeld* (1964) 230 Cal.App.2d 31, 39 [40 Cal.Rptr. 659]), and being persuaded that the rationale of *Moore* is sound, we find that an ambiguity does exist. In other words, the subject provision could mean, strictly, severance of the entire hand at the joint of the wrist *or* where amputation commences at the wrist joint, enough loss of the hand so as to render it useless. (See *King* v. *Metropolitan Life Ins. Co.* (1936) 20 Tenn.App. 246 [97 S.W.2d 651]; cf., *Fuller* v. *Locomotive Engineers' Mut. Life & Acc. Ins. Assn.* (1899) 122 Mich. 548 [81 N.W. 326, 328, 80 Am.St.Rep. 598, 48 L.R.A. 86].)

Since we find that there is an ambiguity in the provision, capable of two distinct meanings, the provision must be construed strictly against the insurer in accordance with well-settled rules. (*Underwriters at Lloyd's of London* v. *Hunefeld, supra,* 230 Cal.App.2d at pp. 38-39.) We therefore hold that under the insurance policy in question, the insurer is liable for the injury here incurred to plaintiff's hand under the terms of the policy's coverage.

The judgment is reversed.

Friedman, Acting P. J., and Janes, J., concurred.

The petition of respondent Lloyds London for a hearing by the Supreme Court was denied October 9, 1969.

---

[5]In this connection we note that in *Borglund* v. *World Ins. Co.* (1957) 211 Ore. 175 [315 P.2d 158, 163], the court by way of a dictum, states that the provision defining "dismemberment" to mean ". . . complete severance at or above the wrist or ankle joint respectively . . ." was "intended to offset decisions such as *Moore* v. *Aetna Life Insurance Co., supra.*" Even if such be the case, we are inclined to doubt the insurer's success.

[6]As can be seen from the case law, this especially is true of the blue collar working man, such as the tool pusher in this case, who must, ordinarily, have full use of both his hands and feet in order to earn a livelihood.