[No. 50534–9. En Banc. January 3, 1985.]

WILLIS D. NEER, *Petitioner*, v. FIREMAN'S FUND AMERICAN LIFE INSURANCE COMPANY, *Respondent*.

*Calbom, Pond, Falkenstein, Warme & Engstrom,* by *James E. Warme,* for petitioner.

*Walstead, Mertsching, Husemoen, Donaldson & Barlow,* by *D. L. Donaldson,* for respondent.

UTTER, J.—Willis D. Neer petitions for reversal of a decision by the Court of Appeals, Division Two, affirming a trial court decision granting summary judgment to Fireman's Fund Insurance Company. The trial court and Court of Appeals held that petitioner was not entitled to benefits under an insurance policy covering loss of both feet by complete severance because he did not suffer a dismemberment. The sole issue before this court involves interpretation of the extent of coverage of an insurance policy purchased by Neer from Fireman's Fund. The Loss of Life Accident Indemnity policy provides, as part of a list of insured losses, coverage for loss of both feet. Although there was no dismemberment in this case, we hold, consistent with our earlier case of *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 545 P.2d 1193 (1976), that the policy covers Neer's loss because the term "loss" as described by the policy does not require dismemberment or amputation.

The facts are undisputed. On July 8, 1981, Willis Neer, while assisting a neighbor in topping a tree, fell 50 to 60 feet to the ground. As a result, his spinal column was severed depriving him of all nerve and muscle function below his mid–back. *Neer v. Fireman's Fund Am. Life Ins. Co.,* 36 Wn. App. 834, 835, 677 P.2d 796 (1984); Transcript of Proceedings, at 35, 37.

At the time of the injury, Willis Neer owned an insurance policy issued by Fireman's Fund which provided that Fireman's Fund would pay him $150,000 for loss of both feet. The policy defined "Loss" as "complete severance through

or above the . . . ankle joint." Transcript of Proceedings, at 32. Neer made a claim on the policy for the injuries which was denied.

Petitioner moved for summary judgment, supported by affidavits of three physicians. These doctors agreed that he had lost the use of his feet and that this loss of use is permanent. They also agreed that, although they could not determine whether the spinal *cord* had been actually severed in the accident, the absence of actual severance was medically insignificant since there is obviously no functioning of the spinal cord below Neer's mid–back. Two of the three stated that some vertebrae were severed.

No material issue of fact was found by the trial court which dismissed the complaint agreeing with Fireman's Fund that the policy required entire separation of the feet from the body. On appeal to the Court of Appeals, the trial court judgment was affirmed.

Respondent urges the court to uphold the Court of Appeals and adopt an interpretation that requires a complete separation of the feet from the body before payment on the policy must occur. Several cases which appear to so require are cited. *Sitzman v. John Hancock Mut. Life Ins. Co.,* 268 Or. 625, 522 P.2d 872 (1974) (no coverage for loss of use of feet as the result of injury to the spinal cord under Accidental Death or Dismemberment policy); *Perrilloux v. First Standard Life Ins. Co.,* 396 So. 2d 427 (La. Ct. App. 1981) (no coverage for amputation of a leg after the prescribed period following injury when the policy is for Accidental Death or Dismemberment and loss is defined as dismemberment by severance); *Reid v. Life Ins. Co. of North Am., Inc.,* 718 F.2d 677 (4th Cir. 1983) (no coverage where the severance was the result of reconstructive surgery and function was actually improved after the surgery); *Cunninghame v. Equitable Life Assur. Soc'y of United States,* 652 F.2d 306 (2d Cir. 1981) (no coverage under Accidental Death and Dismemberment policy for spinal injury resulting in loss of function of both feet when loss is described as dismemberment by severance); *Traverse v.*

*World Serv. Life Ins. Co.*, 436 F. Supp. 810 (W.D. Okla. 1977) (no coverage for loss of function of hands as the result of an assault where the policy covers loss defined as actual severance through or above the hands, there was no allegation of severance, and the court held that loss means severance as opposed to loss of use).

These cases are distinguishable from the present case. In several, the policy under consideration was for dismemberment; in some, loss was described as dismemberment and in one there was no allegation of severance. They are therefore unpersuasive.

One case cited by Fireman's Fund appears to be similar but, on close examination, is not. The Minnesota Supreme Court has held that a Loss of Life, Limb or Sight policy did not cover accidental injury to the spinal cord resulting in paralysis of the legs. *Juhlin v. Life Ins. Co. of N. Am.*, 301 N.W.2d 59 (Minn. 1980). The court, relying primarily on *Sitzman v. John Hancock Mut. Life Ins. Co., supra,* found the term "actual severance" unambiguous and further found the policy required dismemberment or a severe wounding of the limb. However, the policy in *Sitzman* provided coverage for accidental death or dismemberment, and the *Juhlin* court was construing substantially different policy coverage. As a result, we do not find the *Juhlin* court's reasoning persuasive in this case.

Washington has adopted as a definition of loss, loss of use or function. *Morgan,* 86 Wn.2d at 435. This definition of loss incorporates within it the idea that by purchasing coverage for loss of a foot or hand the insured intends "'. . . to provide for financial security in the event of the loss of use of' his hands [or feet], 'thus precluding him from pursuing his livelihood.'" *Morgan,* 86 Wn.2d at 436, quoting *Crawford v. Lloyds London,* 275 Cal. App. 2d 524, 530, 80 Cal. Rptr. 70 (1969). *See also Moore v. Aetna Life Ins. Co.,* 75 Or. 47, 53, 146 P. 151 (1915). In so doing, this court rejected a line of cases requiring dismemberment. Although the insurance policy at issue in *Morgan* covered "loss by severance of both hands at or above the wrists," we held

that there was coverage for loss of use which occurred as the result of amputation of several fingers and did not require the complete amputation of both hands at or above the wrist. *Morgan,* 86 Wn.2d at 433–34. The question of whether severance occurs, within the meaning of an insurance policy, when there is not even a partial amputation, however, still remains.

■ When interpreting language of an insurance contract, the entire contract is to be construed together for the purpose of giving force and effect to each clause. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 484, 687 P.2d 1139 (1984); *Morgan,* 86 Wn.2d at 434. That contract must be construed to carry out the intent of the parties in writing the contract unless there is a clear expression to the contrary somewhere within the contract.

■ Examining the policy at issue, a clear statement at the beginning of the policy indicates that coverage is for accidental injury which either results in loss of life or in one of several enumerated losses. Of the actual losses covered, one is loss of both feet, and loss is defined as complete severance through or above the ankle. The policy language provides broader coverage than Fireman's Fund would have us find. Nothing in the policy limits loss to dismemberment or amputation as did provisions in many of the policies in the cases relied on by Fireman's Fund.

In the policy language in dispute, complete severance has no direct object after it. As a result, the policy does not require "severance of the feet" but rather accidental loss resulting from severance of some portion of the body through or above the ankle. Moreover, severance does not require separation from the body. "[S]everance does not mean amputation. A hand may be severed but need not be amputated. Amputation is irreparably cutting off of a limb while to sever may limit its use, but not necessarily cause amputation." *Mifsud v. Allstate Ins. Co.,* 116 Misc. 2d 720, 721, 456 N.Y.S.2d 316, 317 (1982) (bone of upper arm detached from shoulder in revolving door and left hanging was a covered loss when policy provided coverage for loss

defined as "severance at or above the wrist").

If ambiguous, the policy language must be construed in a manner most favorable to the insured. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 687 P.2d 1139 (1984). Were we to consider the term "loss" defined as complete severance ambiguous, reading the contract in a manner most favorable to petitioner, we would have to find coverage. Read as a whole, however, the contract is not ambiguous. It provides broad coverage for loss resulting from complete severance through or above the ankle. Neer lost the use of both feet as the result of a complete severance of the spinal column, a severance above the ankle. A practical and reasonable interpretation of the contract requires coverage.

This decision is supported by our own cases and those of other jurisdictions as well. *Mifsud v. Allstate Ins. Co., supra; Reliance Ins. Co. v. Kinman,* 252 Ark. 1168, 483 S.W.2d 166 (1972) (coverage although the amputation occurred after the prescribed period had expired since severance can mean functional as well as physical loss and amputation was evidence of the earlier severance); *Huff v. Vulcan Life & Accident Ins. Co.,* 281 Ala. 615, 206 So. 2d 861 (1968) (coverage where policy provides coverage for loss by "severance or amputation" and insured cut arm muscle and bone but arm remained attached, was sewn on and later amputated; the term "sever" does not have the finality of the term "amputate"); *Moore v. Aetna Life Ins. Co.,* 75 Or. 47, 146 P. 151 (1915) (where policy covers loss by removal, a reasonable and sensible construction is that the insured sought insurance against loss of a hand as a useful member of his body and the term "by removal at or above the wrist" is to prevent fraudulent claims); *Brittain v. Prudential Ins. Co. of Am.,* 29 Ala. App. 57, 191 So. 794 (1939) (coverage for loss of use of leg as result of injury to knee followed by surgical removal of parts of the knee when loss means loss by severance since loss was intended to refer to the manner rather than exact physical extent of the injury).

A complete severance above the ankle and loss of func-

tion of petitioner's feet occurred as the result of an accident. Reading the contract in the context of the broad coverage, the intent of petitioner to protect himself in the event he lost the ability to use his feet, and in view of our prior cases, we find that petitioner meets the conditions for coverage under this policy. Consequently, we reverse the appellate court and remand for further proceedings consistent with our decision.

WILLIAMS, C.J., BRACHTENBACH, DOLLIVER, DORE, DIMMICK, PEARSON, and ANDERSEN, JJ., and CUNNINGHAM, J. Pro Tem., concur.