Stephen H. **FARTHING**, Appellant,

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**, Appellee.

No. 4–685A157.

Court of Appeals of Indiana, Fourth District.

Dec. 2, 1986.

John H. Haskin, Haskin & Mocek, Indianapolis, for appellant.

Keith C. Reese, Kenneth E. Wiker, Rocap Rocap Reese Dowing & Heath, Indianapolis, for appellee.

MILLER, Justice.

Stephen H. Farthing initiated this suit against the Life Insurance Company of North America (LICNA) to recover compensation allegedly due for injuries he sustained while under the coverage of an accidental death and dismemberment insurance policy. Farthing amputated parts of several of his fingers with a circular saw. The trial court granted summary judgment for LICNA, and Farthing appeals this judgment. Because the insurance contract is unambiguous, and because Farthing's injuries do not fall within the coverage of the policy, we affirm.

### FACTS

The parties agree as to the underlying facts in this case. On March 17, 1981, Farthing accidentally cut off parts of his right thumb, index finger and middle finger while working with a circular saw in his home workshop.[1] His thumb was severed between the second knuckle and the tip of the thumb. His index finger was severed approximately through the first knuckle, which is known medically as the metacarpophalangeal joint. His right middle finger was severed between the first and second knuckles.

At the time of this accident, Farthing was employed by the Delco Remy Division of General Motors Corporation, and he was covered by a group accident policy offered to General Motors employees by LICNA. This policy insured against accidental death and total or partial disability due to certain types of accidental injuries, including the

---

**1.** In our discussion, the first knuckle refers to the joint which joins the finger or thumb to the hand. The second knuckle refers to the joint which, on the thumb, joins the tip of the thumb to the main portion of the thumb. The second knuckle of the finger is the middle joint. The fingers, other than the thumb, have a third knuckle which joins the tip of the finger to the rest of the finger.

loss of thumb and index fingers. The relevant portions of the contract read:

## "PART II—DESCRIPTION OF COVERAGE

Coverage A—Loss of Life, Limb, Sight, Speech or Hearing Indemnity:

If such injuries shall result in any one of the following specific losses within one year from the date of the accident, the Company will pay the benefit specified as applicable thereto, based on the principle sum stated in the Applicant's application, provided, however, that not more than one (the largest) of such benefits shall be paid with respect to injuries resulting from one accident.

| | |
|---|---|
| Loss of Life | The Principle Sum |
| Loss of two or more members | The Principle Sum |
| Loss of speech and hearing | The Principle Sum |
| Loss of one member | One-Half the Principle Sum |
| Loss of speech | One-Half the Principle Sum |
| Loss of hearing in both ears | One-Half the Principle Sum |
| Loss of thumb and index finger of the same hand | One-Quarter the Principle Sum |

'Member' means hand, foot or eye. 'Loss' means, with regard to hand, or foot, actual severance through or above the wrist or ankle joints; with regard to speech, irrecoverable loss of speech, with regard to hearing in both ears, the entire and irrecoverable loss of hearing in both ears; with regard to thumb and index finger, actual severance through or above the metacarpophalangeal joints."

Farthing's index finger was the *only* finger severed *through* or *above* the metacarpophalangeal joint (the first knuckle). Again, we emphasize the thumb was severed between the second knuckle and the tip of the thumb.

## DECISION

Farthing claims the trial court erred in two ways in granting LICNA's motion for summary judgment. He first argues several of the terms in the insurance contract are fatally ambiguous and those terms should have been construed against LICNA. He also argues that, even if his injuries did not literally comply with the terms of the contract, his injuries substantially complied with those terms.

We must first note summary judgment is only to be granted where there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Rule of Procedure, Trial Rule 56(C); *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51, 54; *Bell v. Northside Finance Co.* (1983), Ind., 452 N.E.2d 951. If there is any doubt as to the existence of a material factual issue, the motion should be denied. *Wingett, supra; Bell, supra.* Even if the facts are not disputed, if they are open to conflicting inferences which alter the outcome, summary judgment should not be granted. *Connell v. American Underwriters, Inc.* (1983), Ind.App., 453 N.E.2d 1028, 1029; *American Family Insurance Group v. Blake* (1983), Ind.App., 439 N.E.2d 1170, 1173; *Asbury v. Indiana Union Mutual Insurance Co.* (1982), Ind.App., 441 N.E.2d 232, 235. But, if the moving party makes a showing that no material issue of fact exists, or that no inference which could alter the outcome exist, the non-moving party must produce evidence to demonstrate the existence of a factual dispute or conflicting inferences. T.R. 56(E); *Wingett, supra; Raymundo v. Hammond Clinic Association* (1983), Ind., 449 N.E.2d 276.

The parties do not disagree as to the basic facts in this case. There is no dispute as to how, when, or where the accident occurred. Neither side questions the fact that the thumb was actually severed beyond the metacarpophalangeal joint. There is no dispute as to either the existence of or wording of the contract. No material fact is in dispute, and solely legal questions remain for review.

### Issue I

Farthing argues the phrases "through or above" and "metacarpophalangeal joint"

render the contract ambiguous. We will find a term in an insurance contract ambiguous when reasonably intelligent people could honestly differ as to the term's meaning. *Northland Insurance Co. v. Crites* (1981), Ind.App., 419 N.E.2d 164, 167.

To establish that the term "through or above" is ambiguous, Farthing cites the Washington Supreme Court's decision in *Morgan v. Prudential Insurance Company of America* (1976), Wash., 545 P.2d 1193. In *Morgan,* the plaintiff was insured under an accidental injury policy which provided compensation if both hands were severed "at or above" the wrists. *Morgan, supra* at 1194. The Washington Supreme Court found the phrase "at or above the wrist" subject to various interpretations. Courts in California, Washington, and Oregon have found similar wording ambiguous. *See Crawford v. Lloyds of London* (1969), 275 Cal.App.2d 524, 80 Cal.Rptr. 70; *Moore v. Aetna Life Insurance Co.* (1915), 75 Or. 47, 146 P. 151; *Neer v. Fireman's Fund American Life Insurance Co.* (1985), Wash., 692 P.2d 830.

We are not persuaded by these cases. The word "through", while susceptible of several meanings in the abstract, has an obvious meaning when used in the context of this contract. We do not think that reasonable men could find the words "actual severance through ... the metacarpophalangeal joint" to mean anything other than an actual, physical separation occurring at the joint. Several of our sister jurisdictions have found "actual severance ... through" to be unambiguous and have required actual physical separation at the required point. *See, Hovartin v. Allstate Life Insurance Co.* (1986), N.D.Cal., 631 F.Supp. 1271; *Juhlin v. Life Insurance Company of North America* (1980), Minn., 301 N.W.2d 59; *Pilling v. Metropolitan*

*Life Insurance Co.* (1940), Tenn., 148 S.W.2d 41. To give another meaning to these words is to twist them out of their common and ordinary meaning and to try and create an ambiguity where none actually exists.

Neither is the term "above" ambiguous as used in the contract. Since "above" was used to fix the location of an injury to the finger in relationship to the joint, "above" must have one of two meanings. Either it must mean that the injury is located between the tip of the finger and the joint in question, or between the joint and the arm. Given these possibilities, we do not think a reasonably intelligent person could disagree as to the location. Since the contract provides for compensation if the injury occurs above the joint, but no compensation if the injury occurs below the joint, it is obvious that "above" must mean between the joint and the arm. It would make no sense for the company to compensate for the loss of a small portion of the finger, but not to compensate for the loss of a larger portion.

Even if the meaning of "above" were not obvious from the context of the contract, it is a word which has been commonly used to designate the location of an injury with respect to a particular joint. This common usage establishes that an injury to an appendage which occurs above the joint is located between the joint and the torso, while an injury which occurs below a joint is located between the joint and the end of the appendage. This definition of "above" has been used in both Indiana case law and Indiana statutory law. *See, Sitzman v. National Life and Accident Insurance Company* (1962), 133 Ind.App. 578, 182 N.E.2d 448; *National Casualty Company v. Birt* (1937), 104 Ind.App. 424, 11 N.E.2d 505.[2]

---

**2.** Our Workman's Compensation Act, IND.CODE 22–3–3–10(a)(1), uses "above" in a manner similar to the manner in which LICNA used it in the contract. In the schedule of compensation for injuries, injuries which occur above a joint are considered greater disabilities than injuries which occur below a joint. *Id.* Again, if an injury above the joint were interpreted to mean an injury further from the torso, the statute

would be granting greater compensation for a lesser injury. It strains reason to assume the legislature would intend such an illogical result. We do not think the term "above" can be interpreted in more than one manner by a reasonable man in the context of either the Workman's Compensation Act or the policy LICNA issued Farthing.

Farthing argues the term "metacarpophalangeal joint" is inherently ambiguous because a lay person would not know which joint is the metacarpophalangeal, and because a standard dictionary would not define the metacarpophalangeal joint. He argues that the term, without further explanation, is inherently ambiguous when considered from the point of view of the lay person.

We do not find Farthing's argument persuasive. As LICNA noted, the personal accident insurance booklet issued to Farthing explained in plain English the loss with respect to the finger and thumb meant "the permanent loss or severance at or above the joints where the finger and thumb connect to the hand." Webster's Third New International Dictionary defines metacarpophalangeal as "of, relating to, or involving the metacarpus and phalanges." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1419 (1976). Metacarpus is defined as "the part of the hand ... between the carpus and phalanges...." *Id.* Carpus is defined as "the wrist ..." *Id.* at 343. Phalanges is the plural of phalanx, which is defined as "one of the digital bones ... that in man are three to each finger and toe with exception of the thumb and great toe which have but two each ...." *Id.* at 1693.

Since the metacarpophalangeal joint must be a joint involving both a phalanx, or bone of the finger, and metacarpus, or the part of the hand between the wrist (carpus) and a phalanx, we cannot say that the phrase metacarpophalangeal joint is ambiguous. There can be one and only one such joint with respect to each finger, since there is only one joint at which the finger joins the hand.

*Issue II*

Farthing argues that, even if the wording of the contract is unambiguous, he can recover because he "substantially complied" with its terms. Courts in several jurisdictions have allowed plaintiffs to recover under insurance contracts which required severance of a member, even if the member was not actually severed, or if the member was not severed at the location specified in the contract. These jurisdictions allow the plaintiff to recover if he sustains a loss of function of the member equivalent to the loss he would have suffered if an actual severance had occurred. *See, Crawford, supra; Moore, supra; Neer, supra; Morgan, supra.* Farthing presented evidence that his injuries resulted in a disability equivalent to that he would have sustained had he severed his fingers in the required locations.[3]

■ We cannot accept this argument. Although we sympathize with Farthing's plight, we cannot ignore the plain wording of the insurance contract. This contract does not insure against *loss of use* of the fingers. It insures against the loss, by actual severance, of the fingers themselves. In Indiana, a court may not extend an insurance contract beyond the coverage stated in the policy, and a court may not rewrite clear and unambiguous language of a policy. *American States Insurance Company v. Aetna Life and Casualty Co.* (1978), 177 Ind.App. 299, 379 N.E.2d 510, 516. Even an insurance company, after all, is entitled to rely on the contracts it signs.

Many of our sister jurisdictions have refused to accept loss of function as the equivalent of loss by actual severance, and instead apply the contract as written. *See, Boyes v. Continental Insurance Co.*

---

**3.** Farthing's medical expert testified via affidavit that the loss of function due to the partial loss of the thumb, index finger, and middle finger Farthing suffered was equivalent to the loss of function he would have suffered had he severed the thumb and index finger in the locations specified in the policy. Record, p. 109. We note the policy did not purport to cover loss of function or use, nor did it in any way cover severance of the middle finger. If function of the hand was at issue here, then a severance of the middle, index, and little fingers, without any damage to the thumb and index finger, should be compensable under the policy as long as the resultant loss of function was equivalent to the loss of function resulting from a severance of the thumb and index finger. We cannot believe either party intended such a result, nor can we justify such a result under this policy.

(1976), 139 Ga.App. 609, 229 S.E.2d 75; *Galindo v. Guarantee Trust Life Insurance Co.* (1980), 91 Ill.App.3d 406, 46 Ill. Dec. 712, 414 N.E.2d 765; *Juhlin, supra; Great Northern Life Insurance Co. v. Tulsa Cotton Oil Co.* (1938), 182 Okl. 107, 76 P.2d 913; *Alvarado v. Pilot Insurance Co.* (1983), Tex.Civ.App., 663 S.W.2d 108. We find the reasoning of these courts much more persuasive than that of the courts which accept loss of function as the equivalent of loss by severance.

*Galindo* is perhaps the most instructive of these cases. In *Galindo* the plaintiff, a high school football player, broke his neck and lost the use of his arms and legs. The Illinois Court of Appeals affirmed an award of $20,000 for the loss of use of Galindo's arms and legs, but refused to award him an additional $20,000 for the loss of use of his hands and feet. The court stated, "Construing the provision in favor of the insured, we find that the lack of reference to severance or dismemberment of arms and legs in the specific loss provision, when such is required for hands and feet, invokes the *general rule [allowing compensation]* regarding loss of member." *Galindo, supra,* 414 N.E.2d at 269. But, the court refused to grant compensation for loss of hands and feet *because the contract as written required the loss to be by actual severance* for the injured to recover. *Id.* As the Georgia Court of Ap-

peals said in *Boyes,* "The parties are free to make their own contracts, within the prescribed bounds of law, and the courts are not authorized, by interpretation, to rewrite or change them, or to extend the coverage. This principle applies to insurance contracts." *Boyes, supra,* 229 S.E.2d at 77 (quoting *Parris & Son, Inc. v. Campbell* (1973), 128 Ga.App. 165, 168, 196 S.E.2d 334, 337.)

It is against the policy of this state for a court to ignore the words of an insurance contract. *American States Insurance, supra.* We will not ignore the words of this contract and bind LICNA to an agreement it did not make. The parties here were free to enter into an agreement, and we will not change the terms of that agreement.

We therefore affirm the decision of the Boone County Superior Court granting summary judgment in favor of LICNA.

Affirmed.

CONOVER, P.J., and YOUNG, J., concur.